**In re MOMENTUM MANUFACTURING CORPORATION, Debtor.**

**MOMENTUM MANUFACTURING CORPORATION, Appellant,**

v.

**EMPLOYEE CREDITORS COMMITTEE, Appellee.**

**No. 1168, Docket 93–5090.**

United States Court of Appeals, Second Circuit.

Argued March 4, 1994.

Decided June 6, 1994.

Martha L. Berry, Syracuse, NY (Hancock & Estabrook, Syracuse, NY), for debtor-appellant.

Lee E. Woodard, Syracuse, NY (Martin, Martin, Piemonte & Woodard, Syracuse, NY), for creditors-appellees.

Before KEARSE and LEVAL, Circuit Judges, and GLASSER, District Judge.*

LEVAL, Circuit Judge:

This is an appeal from an order of the United States District Court for the Northern District of New York, Frederick J. Scullin, J., affirming an order of the Bankruptcy Court for the Northern District of New York, Stephen D. Gerling, B.J., denying the Debtor's motion to amend its schedules, and dismissing the Debtor's objections to portions of its former employees' proofs of claim. The order is affirmed.

---

* Hon. I. Leo Glasser, United States District Judge for the Eastern District of New York, sitting by designation.

*Background*

Appellant Momentum Manufacturing Corporation ("Debtor" or "Momentum") was a manufacturer of electrical component parts. On May 3, 1990, it filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101 *et seq.* (1988) (the "Code"). The Debtor had dismissed approximately 260 of its 270 employees the day before filing its petition. Evidently hoping to continue operations, on May 14, 1990, Momentum rehired approximately 140 of the 260 recently-terminated employees.

On June 7, 1990, the Debtor's employees established an employee creditors committee pursuant to 11 U.S.C. § 1102 (the "Committee"). Approximately two weeks later, the Debtor filed its schedule of liabilities pursuant to Section 521(1) of the Code and Fed. R.Bankr.P. 1007(b)(1). The Debtor submitted schedules of employee claims, which listed the amounts owed to employees for accrued wages, salaries, commissions, sick pay, severance pay and payment in lieu of termination. At issue in the instant appeal are employee claims for severance pay and payment in lieu of termination (hereinafter collectively referred to as "severance claims").[1] In listing the severance claims on the Schedules, the Debtor did not identify them as "contested."

By early September 1990, unable to continue operations, the Debtor released all but 25 employees. At approximately the same time, the Debtor filed its Original Disclosure Statement with the bankruptcy court. On November 5, 1990, pursuant to Sections 1121 and 1125(b) of the Code, the Debtor filed its Plan of Reorganization, together with an Amended Disclosure Statement. It then proceeded to solicit votes from its various creditors on its Plan of Reorganization.

The Amended Disclosure Statement, together with other company communications, led the current and former employees to believe that under the Plan the Debtor would pay approximately $500,000 for employee severance claims of up to $2,000 per employee. The Amended Disclosure Statement stated in pertinent part:

> VI. (6) *Priority Unsecured Wage Claims*
>
> Class Six consists of holders of claims for wages and other benefits earned while employees of the Debtor. Claims of the *current and former employees* of the Debtor that are entitled to priority under 11 U.S.C. § 507(a)(3) (earned within 90 days pre-petition *up to $2,000.00 per employee*) total approximately $500,000.00 as listed on *Schedule A–1 prepared in May, 1990.* These claims are required by law to be paid after the First National Bank of Boston's secured claim and all administrative claims have been paid, but ahead of all other priority and unsecured claims, as the Amended Plan provides. (emphasis added.)

In listing the severance claims on the Schedules, the Debtor did not identify them as "contested."

The Debtor also represented in intra-company communications that the employees would receive money from the estate as severance pay. For example, in a letter dated June 8, 1990, Momentum explained:

> If you are terminated, then you have a claim to be paid according to company policies.... Please be aware that the Company may not have enough money to pay everybody in full. You have a Prior[ity] Claim under the law for a payout to you of up to $2,000. (This portion will hopefully be paid to *former* and qualifying *current* employees in the Fall.) (emphasis added.)

Several employees testified that Martin Zelbow, the former president of the company, reiterated the Debtor's intention to make severance payments during several meetings with employees.

The employees voted to approve the Plan.[2] The bankruptcy court confirmed the Plan on

---

1. The schedules of employee claims list severance payments for the approximately 120 dismissed employees who were not rehired after the May 2, 1990 layoff. Because the remaining employees were working at the time the Schedules were prepared, their claims to severance benefits were not ripe, and the Debtor did not include their names in the Schedules.

2. Because it was unable to continue operations, the Debtor filed a liquidating plan.

November 25, 1991, after a confirmation hearing. Without the employees' approval, the Plan could not have been confirmed.

*Motion to Amend the Schedules and Objections to Employee Claims*

On January 14, 1992, soon after the court confirmed the Plan, the Debtor moved pursuant to Fed.R.Bankr.P. 1009(a) to amend its Schedules to delete the amounts allocated to employees' claims for severance pay. The Debtor also sought to file objections to those portions of the employees' proofs of claim seeking severance payments.

Although mere listing of liabilities on the Schedules filed under Section 521(1) does not amount to a concession that such claims are valid, the liabilities will be deemed "prima facie evidence of the validity and amount of the claims of creditors" *unless* they are listed as "disputed, contingent, or unliquidated." Fed.R.Bankr.P. 3003(b)(1). If a debtor does not list the liabilities as contested, it must prove the invalidity of the claims.

Because Momentum did not list the severance payments as "disputed, contingent, or unliquidated," it bore the burden of proving the invalidity of such claims. It therefore sought to amend its Schedules in order to shift the burden of proof back to the employees. The Debtor argued that it was entitled to amend the Schedules as a matter of right under Fed.R.Bankr.P. 1009(a).

In addition to seeking to amend the Schedules, the Debtor also filed objections to the employees' proofs of claim for severance payments. *See* Fed.R.Bank.P. 3007. The Debtor argued that it was entitled to object to the proofs of claim, even though the Plan had already been confirmed, because the court had set a deadline for filing objections 60 days after the confirmation.

*Bankruptcy Court Decision*

Concluding that the Debtor had represented in the Amended Disclosure Statement and in statements to its employees that the employees would receive payments from the estate as severance pay, and had procured the employees' vote in favor of the Plan through these representations, the bankruptcy court denied the Debtor's motion to amend the Schedules and to object to the proofs of claim on estoppel grounds.[3]

Regarding the motion to amend the Schedules, the court recognized that Rule 1009(a) does provide that a schedule "may be amended ... as a matter of course at any time before the case is closed." The court emphasized, however, that the right cannot be exercised freely in all circumstances without regard to issues of bad faith and prejudicial reliance, *see In re Williamson,* 804 F.2d 1355, 1358 (5th Cir.1986); *In re Blaise,* 116 B.R. 398, 400–01 (Bankr.D.Vt.1990), and held that Momentum was estopped from amending its Schedules.

The bankruptcy court applied similar reasoning to the Debtor's motion to object to the proofs of claim. Just as there are equitable limitations on a Debtor's right to amend a schedule, there are also equitable limitations on a Debtor's right to object to proofs of claim. Thus, the bankruptcy court concluded that Momentum's conduct estopped it from objecting to the employees' claims.

*The District Court Decision*

On appeal, the Debtor argued that the bankruptcy court erroneously applied common law equitable principles to the case. It asserted that because its employee benefit plan was governed by the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (1988), ERISA preempted the bankruptcy court's application of common law principles to restrict the Debtor's discretion under its benefit plan. Momentum contended that its company severance policy gave it broad discretion to deny payment of severance benefits, and that it could exercise this power even after the Plan had been confirmed.

The district court rejected these arguments and affirmed the holding of the bankruptcy court. The Debtor brought this appeal.

---

3. The court granted the portions of the Debtor's motions seeking to limit employee priority claims to amounts earned within 90 days of the date of the Debtor's filing; it also corrected certain vacation and sick pay calculations. The Appellant does not contest these rulings.

### Discussion

■ An order of a district court functioning in its capacity as an appellate court in a bankruptcy case is subject to plenary review. Thus, we "independently review the factual determinations and legal conclusions of the bankruptcy court." *In re PCH Assoc.,* 949 F.2d 585, 597 (2d Cir.1991) (citation omitted). The bankruptcy court's legal conclusions are evaluated *de novo;* its findings of fact are subject to a clearly erroneous standard. *Id.*

Momentum contends that it was improper for the bankruptcy court to prevent it from a) amending its Schedules to delete employee severance claims, and b) objecting to the employee proofs of claim for severance payments. We disagree. In our view, the bankruptcy judge and district judge properly invoked their equitable powers and relied on the principle of equitable estoppel to bar the Debtor from taking these positions.

### I. *Use of Equitable Principles in Reorganization*

■ It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process. Section 105(a) of the Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

■ We have repeatedly emphasized the importance of the bankruptcy court's equitable power. In *In re Prudential Lines Inc.,* 928 F.2d 565 (2d Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991), we explained that Section 105(a) should be " 'construed liberally to enjoin [actions] that might impede the reorganization process.' " [4] *Id.* at 574 (brackets in original; citation omitted). We have also stressed that a bankruptcy court

> "may sift the circumstances surrounding any claim in order to ascertain that injustice or unfairness is not accomplished in the administration of the debtor's estate,

and in so doing it may adopt that remedy which it deems most appropriate under the circumstances."

*In re Stirling Homex Corp.,* 591 F.2d 148, 155–56 (2d Cir.1978) (quoting 6 Collier, *On Bankruptcy* ¶ 3.17 (14th ed. 1978)). *See also In re Sire Plan, Inc.,* 100 B.R. 690, 694 (Bankr.S.D.N.Y.1989).

■ Of prime importance in the reorganization process is the principle of disclosure. The Code obliges a Debtor to engage in full and fair disclosure, providing to creditors "information of a kind, and in sufficient detail, as far as is reasonably practicable ... that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan...." 11 U.S.C. § 1125(a)(1). This disclosure requirement does not attach only to the preparation of disclosure statements. "Full and fair" disclosure is required during the *entire* reorganization process; it begins "on day one, with the filing of the Chapter 11 petition." *In re V. Savino Oil & Heating Co.,* 99 B.R. 518, 526 (Bankr.E.D.N.Y.1989).

■ Consistent with these equitable principles, the courts below properly applied the doctrine of equitable estoppel. To prevail on their claim of equitable estoppel, the employees were required to show that when they voted on the Plan, they (1) lacked knowledge of the true facts, (2) reasonably relied on the Debtor's misleading conduct, and (3) suffered prejudice as a result of their reliance. *See In re Roundabout Theatre Co.,* 131 B.R. 14, 17 (S.D.N.Y.1991). We believe the employees met their burden.

The Amended Disclosure Statement fairly communicated the Debtor's intention to pay under the Plan approximately $500,000 "in severance pay, earned within 90 days of the petition, to a maximum of $2,000 per employee." The Debtor continued to convey this impression through the confirmation hearing. The evidence showed that, notwithstanding such representations, the Debtor had intended to deny such benefits from the inception of the Chapter 11 case. For example, at the

---

4. This power is not unlimited. Thus, a bankruptcy court may not exercise this power in contravention of provisions of the Code. *See In re Joint Eastern & Southern Dist. Asbestos Litig.,* 982 F.2d

721, 751 (2d Cir.1992) ("equitable considerations ... not a license to courts to invent remedies that overstep statutory limitations").

hearing on Momentum's motion to amend, Momentum's Vice President for Finance testified that when Momentum filed the original schedule, it had already decided not to provide severance payments. And although Momentum filed the applications at issue here two months after confirmation, its counsel had researched amending the schedules a month before the plan was confirmed.

The evidence showed furthermore that the employees relied on Momentum's misleading representations and suffered prejudice as a result: several employees testified that they would not have voted for the Plan had they been aware that the Debtor intended to reject their pension claims.[5] Had the employees rejected the Plan, the Plan would never have been approved.

Based on the Debtor's deceptive misrepresentation of its intention to deny severance payments, the district court justifiably found that the employees reasonably believed they would be receiving severance payments under the Plan and that the Debtor's conduct engendered this belief. Moreover, we are satisfied by the court's finding that the employees suffered prejudice as a result of their reliance on the Debtor's conduct.

We are convinced that the bankruptcy court's denial of the Debtor's motion to amend its Schedules and to file objections was a valid exercise of its equitable powers, reflecting a well-founded concern that the Debtor had engaged in deception rather than disclosure,[6] and that the employees had suffered prejudice thereby. The Debtor had breached its obligation to engage in "full and fair" disclosure; the court fashioned an appropriate remedy.

## II. *ERISA and Pre-emption*

■ Section 1144(a) of ERISA states that "the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title...." 29 U.S.C. § 1144(a). Arguing that its severance plan is an ERISA "employee benefit plan," the Debtor asserts that ERISA pre-empts the application of common law and equitable doctrines. Thus, Momentum argues that the bankruptcy court was precluded from using equitable doctrines to estop the Debtor from administering its Plan in accordance with ERISA. This argument is frivolous.

■ The determinations made by the courts below did not supersede or interfere with the primacy of ERISA. ERISA does indeed supplant other law in the interpretation of the Plan and the determination of employee benefits under it. It does not follow that an employer is shielded from estoppel as a consequence of its own inequitable or misleading conduct. This court and the courts below have not interpreted the Plan under any laws other than the governing law. They have simply barred the Debtor in litigation from asserting otherwise lawful positions where the Debtor's prior misleading conduct would make such an assertion inequitable. *See National Companies Health Benefit Plan v. St. Joseph's Hosp. of Atlanta,* 929 F.2d 1558, 1571–74 (11th Cir.1991) (equitable estoppel applies where employees relied on company representative's interpretation of pension plan).

### *Conclusion*

The judgment of the district court is affirmed.

---

**5.** Momentum argues that the employees who continued to work after the Schedules were filed were not entitled to rely on the Schedules as a basis for expecting to receive benefits from the estate. Momentum contends that to the extent the Schedules could be relied on by anyone, only the employees whose severance payments were included in the Schedules would be permitted to have any expectation arising out of the Schedules. We disagree. The Schedules referred to "current and former employees." Moreover, the only reason the employees who had been rehired were not included in the original Schedules is

that their continued employment meant that their severance claims had not ripened. Finally, the Committee had produced other evidence that justified all of the employees' expectation that they would receive severance payments.

**6.** Because the court applied the same equitable principles to both the motion to amend the Schedules *and* the motion to object to the proof of claims, we consider the rejection of these applications together.