In re NEW TIMES SECURITIES SERVICES, INC. and New Age Financial Services, Inc., Debtors.

Maryann Stafford, Rheba Weine, and Joel Weine, Plaintiffs,

v.

James W. Giddens, as Trustee, and The Securities Investor Protection Corporation, Defendants.

No. 05–CV–0008(JS)(ETB).

United States District Court, E.D. New York.

Aug. 16, 2005.

May Orenstein, Heller, Horowitz & Feit, P.C., New York City, for Appellants.

James B. Kobak, Hughes Hubbard & Reed LLP, New York City, for Appellees.

*ORDER*

SEYBERT, District Judge.

Plaintiffs, Maryann Stafford, Rheba Weine, and Joel Weine ("Appellants" or "Plaintiffs"), have brought the instant appeal from an Order, dated May 30, 2003 ("May Order"), of the United States Bankruptcy Court for the Eastern District of New York. The May Order upheld the Trustee's determination that Plaintiffs are not protected under the Securities Investors Protection Act ("SIPA"). The instant appeal presents this Court with the narrow issue of whether Plaintiffs qualify as "customers" under SIPA. This Court finds that the Plaintiffs are "customers" and, therefore, the Bankruptcy Court erred in denying Plaintiffs' claims. Accordingly, the Bankruptcy Court's ruling is REVERSED.

*FACTUAL BACKGROUND*

Although the question presented here is a question of law, the factual background of the case warrants review.

Plaintiffs were the victims of an elaborate "Ponzi scheme" spanning almost seventeen years and costing investors tens of millions of dollars. William Goren ("Goren") defrauded investors in one of three ways: (1) investing in fictional money market funds, (2) pretending to invest in real money market funds, and (3) issuing fraudulent promissory notes. *See, e.g., In re New Times Sec. Services, Inc.*, 371 F.3d 68, 71 (2d Cir.2004).

Here, Plaintiffs were tricked into investing in fraudulent securities. Maryann Stafford and Rheba Weine invested $75,000 and $35,000, respectively, with Goren for the purchase of securities.

Before the fraud was uncovered, however, Plaintiffs authorized Goren to sell the securities and to reinvest the money in promissory notes. After having already

misappropriated Plaintiffs' money, Goren betrayed Plaintiffs' trust a second time in purporting to liquidate non-existent securities.

The issue presented is whether Plaintiffs should be protected by SIPA when at the time of the filing date, they believed they were creditors, not customers. The Court holds that they should not be denied protection under SIPA.

*LEGAL STANDARD*

■ Under Rule 8013 of the Federal Rules of Bankruptcy, "[o]n an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." FED. R. BANK. P. 8013. The court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous ...." *Id.; see also In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir.1994); *In re PCH Assocs.*, 949 F.2d 585, 597 (2d Cir.1991). Here, there is no material dispute as to the relevant facts. Therefore, the finding of facts are not clearly erroneous and will not be set aside. The bankruptcy court's legal conclusions are evaluated *de novo. See In re Momentum Mfg. Corp.*, 25 F.3d at 1136.

*DISCUSSION*

■ Plaintiffs assert that they are covered by the statutory definition of customer. The statutory definition of customer includes "any person who has deposited cash with the debtor for the purpose of purchasing securities." 15 U.S.C. § 78lll(2). Thus, The plain meaning of the statute suggests that Plaintiffs should be considered customers because they provided Goren with money to invest in securities. Defendants raise two arguments in response.

First, Defendants argue that language in the statute denying customer status to any person who has "a claim for cash or securities which ... is part of the capital of the debtor" precludes Plaintiffs from recovery. 15 U.S.C. § 78lll(2)(B). According to Defendants, Plaintiffs' claims are for part of the capital of the debtor because Plaintiffs received promissory notes before the filing date. Second, Defendants maintain that Plaintiffs were not intended to be protected under SIPA because they did not possess the expectations of customers at the time of the filing date. Neither argument is convincing to this Court. Adopting Defendants' suggested approach to determining customer status under SIPA leads to incongruous results.

For example, two investors receive fraudulent statements indicating that their securities have been liquidated. Before the fraud is exposed, however, one investor loans on paper the "proceeds" from the fraudulent sale back to the broker. According to Defendants' construction of SIPA, while both investors were victims of fraud, one of them was victimized as a customer while the other was victimized as a creditor and hence unprotected under SIPA.

■ This arbitrary distinction runs contrary to the Securities and Exchange Commission ("SEC") Series 500 Rules that normally determine whether customers are entitled to claims for cash under SIPA. Under the Series 500 Rules, "if the debtor sends a written confirmation to the customer that the securities in the customer's account have been sold, then the customer has a 'claim for cash,' even if the sale never took place ...." *New Times*, 371 F.3d at 86; *see also* 17 C.F.R. § 300.501(a). Claims for cash under SIPA, therefore, arise from the nature of the transaction itself, not from the absence of subsequent transactions.

Furthermore, in *New Times,* the issue regarding plaintiffs' expectations was wholly unrelated to their status as customers. *See New Times,* 371 F.3d at 86–87. Both parties agreed that plaintiffs were customers under SIPA. *Id.* Like Plaintiffs here, the plaintiffs in *New Times* were defrauded into investing money with Goren for the purchase of securities. *Id.* at 74.

The issue in *New Times* was whether the plaintiffs, as customers, were entitled to claims for securities or for cash. *Id.* at 71. While this issue would normally be resolved under the Series 500 rules, the statute was inapplicable because "the Rules do not govern transactions involving fictitious securities." *Id.* at 87.

The Court, instead, examined the intention of the Series 500 rules and concluded that their function was to protect customers' "legitimate expectations." *Id.* Accordingly, the court determined that "claimants ... should be treated as having claims for securities because the confirmations and account statements that they received from the Debtors stated that the Claimants held securities in their accounts." *Id.*

Applying the same inquiry here as to Plaintiffs' legitimate expectations, the Court notes that Plaintiffs received a written confirmation that the securities in their account had been sold. Plaintiffs relied on the confirmation in loaning the proceeds of the "sale" to Goren. Plaintiffs did not believe they possessed securities but instead believed they possessed cash. Therefore, Plaintiffs are customers who are entitled to claims for cash.

The Defendants' approach would essentially punish Plaintiffs for holding bogus promissory notes in reliance on information they received from their broker. This end result would controvert the purpose of SIPA. *See id.* at 87 ("[T]he drafters' emphasis was on promoting investor

confidence in the securities markets and protecting broker-dealer customers."). Ruling in favor of the Defendants would also encourage customers to be more distrustful and vigilant in their dealings with brokers, which is not a goal of SIPA. *See id.* ("This goal of greater investor vigilance, however, is not emphasized in the legislative history of SIPA.").

## CONCLUSION

Based on the foregoing analysis, this Court finds that the Bankruptcy Court erred in holding that Plaintiffs are not protected under SIPA. Accordingly, the Bankruptcy Court's ruling is hereby REVERSED.

SO ORDERED.