### In the Matter of Bruce S. SMITH, Debtor.

### Trina Tidwell, Plaintiff,

v.

### Bruce S. Smith, Defendant.

### Sandra Sterling–Ahlla, Plaintiff,

v.

### Bruce S. Smith, Defendant.

### Nos. 05 B 40196, 07 A 00011, 07 A 00012.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Dec. 7, 2007.

Darryl E. Robinson, Westchester, IL, for Plaintiff.

Steven H. Jesser, Northfield, IL, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

Defendant Bruce S. Smith ("Smith" or "Debtor") filed his Chapter 7 bankruptcy case to which these Adversary proceedings relate. A discharge order was entered therein on January 17, 2006. Prior to Smith's bankruptcy filing, Plaintiffs Trina Tidwell ("Tidwell") and Sandra Sterling–Ahlla ("Sterling–Ahlla") (collectively "Plaintiffs" or "Creditors") filed separate suits against Debtor in state court each alleging the intentional tort of sexual assault. However, Plaintiffs were not scheduled as creditors in the bankruptcy case, so notice of the bankruptcy was not given to Plaintiffs by the Bankruptcy Clerk ("Clerk of Court" or "Bankruptcy Clerk"). Following Debtor's discharge, Plaintiffs each filed a Motion "to Allow State Court Case to Proceed," more specifically, requesting an order that the discharge did not stay Plaintiffs' state court lawsuits. Those motions were set for status until Plaintiffs filed Adversary Complaints seeking particular relief.

Plaintiffs' Adversary Complaints were then filed, each containing three counts. In Count I, each objects to dischargeability of Defendant's alleged debt pursuant to 11 U.S.C. § 523(a)(6). In Count II, Plaintiffs each objects to Debtor's discharge pursuant to 11 U.S.C. § 727(c)(d)(e) and Rule 7001(4) Fed. R. Bankr.P. In Count III, Plaintiffs each seek to have Debtor's discharge revoked pursuant to 11 U.S.C. § 727(d)(1). Debtor filed Motions to Dismiss for lack of timely filing of objections to discharge and dischargeability. Debtor's Motions to Dismiss were denied by oral ruling on April 10, 2007, because of the possibility under facts presented that the Adversaries would be deemed timely filed.

A consolidated hearing was held on the pending Motions to Allow State Case to Proceed and the Adversary Counts attacking discharge. After considering the evidence and arguments presented by the parties, the following Findings of Fact and Conclusions of Law are made and will be entered, pursuant to which Counts II and III are dismissed, but Count I of each Plaintiffs' Adversary Complaints is deemed timely filed. Plaintiffs will be allowed to prosecute their state court claims to judgment, and Count I in each of remaining Adversary proceedings will be carried on status until those judgments are entered. If Plaintiffs prevail there, they may then return here to seek adjudication in Count I to have the state court judgments declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

## FINDINGS OF FACT

1. On December 18, 2003, Plaintiffs filed separate lawsuits against Debtor in the Circuit Court of Cook County, Illinois, sounding in intentional tort for sexual assault. Those complaints allege that Debtor, a physician specializing in the area of obstetrics and gynecology, unlawfully engaged in sexual intercourse with Plaintiffs during routine prenatal examinations.

(Compl. Ex. A.) Defendant denies those allegations. (Answer ¶¶ 18, 20.)

2. Debtor testified that his employer failed to purchase an insurance "tail rider" extending his medical malpractice insurance coverage. Therefore, the state court cases were and are defended by counsel retained by Debtor's insurance provider under reservation of right to defend without a commitment to pay any judgment. Defendant therefore faces the possibility of large uninsured personal liability in those cases.

3. On June 24, 2004, Debtor filed his first petition for relief under Chapter 7 of the Bankruptcy Code. (Def.'s Ex. 1.) Plaintiffs were listed by name, but by address "in care of" their attorney in the state court proceedings. They were scheduled thereby as unsecured creditors on Schedule F of that petition, and therefore received notice of Debtor's first bankruptcy case from the Clerk.

4. On November 23, 2004, on motion of the United States Trustee, Debtor's first bankruptcy case was dismissed for substantial abuse. (Def.'s Ex. 2.)

5. On September 26, 2005, Debtor filed a second petition for relief under Chapter 7 of the Bankruptcy Code. (Def.'s Ex. 3.) Plaintiffs were not in any way listed as unsecured creditors on Schedule F of that petition on which all such creditors are to be listed. However, Plaintiffs' lawsuits were identified in Debtor's Statement of Financial Affairs along with the suits by other parties not listed in Schedule F. (*Id.*)

6. Every Chapter 7 petition contains a Declaration Concerning Debtor's Schedules including Schedule F. Under penalty of perjury, Debtor signed that declaration stating, "I have read the foregoing summary and schedules … and that they are true and correct to the best of my knowledge, information, and belief." (*Id.*) How-ever, it is clear that Schedule F was false in that it did not list all known creditors.

7. Debtor testified that he had no intent to mislead Plaintiffs by failing to list them on Schedule F of his bankruptcy petition. He further testified that he is not an expert in bankruptcy and, therefore, did not understand the difference between Schedule F and the Statement of Financial Affairs where the Plaintiffs were named. However, he clearly had knowledge of the serious suits against him in the state court cases and even identified those suits on his Statement of Affairs. Moreover, he has listed Plaintiffs on Schedule F in his first bankruptcy case. Finally, it is doubtful that his insurance will pay any judgment against him and he therefore had a financial incentive to delay or deny notice of his second bankruptcy case to Plaintiffs. On those facts, it is found that the omissions of Plaintiffs on Schedule F were intentional and that Debtor's oath was intentionally false.

8. The attorney who prepared Debtor's bankruptcy petition was knowledgeable and experienced in filling out bankruptcy schedules in Chapter 7 cases. He testified that Plaintiffs were omitted from Schedule F because of his innocent mistake attributable to his heavy workload in anticipation of the Bankruptcy Abuse Prevention and Consumer Protection Act amendments to the Bankruptcy Code that were scheduled to take effect in October of 2005 (after Debtor's second bankruptcy was filed). However, because the Plaintiffs were known creditors identified in the Statement of Affairs and in Schedule F of the first bankruptcy, but were omitted from Schedule F of the second bankruptcy, the Defendant's oath that the Schedules were "true and correct" was false. Moreover, the testimony of Debtor's experienced bankruptcy counsel was that he usually compared the Schedule F of an earlier

first case and always read the Statement of Affairs in the second case. His claim that the omission on Schedule F was an innocent mistake was therefore not credible.

9. Because Plaintiffs were not listed on Schedule F of Debtor's second bankruptcy petition, they did not receive notice from the Clerk of Court of the bankruptcy proceedings, or notice of the deadline for objecting to discharge or dischargeability. Under Bankruptcy rules and procedures, listing Plaintiffs' lawsuits in Debtor's Statement of Financial Affairs could not and did not trigger the provisions under Rule 2002 Fed. R. Bankr.P. for notice to these Plaintiffs.

10. On November 8, 2005, the § 341 Meeting of Creditors was held, and the Chapter 7 trustee subsequently filed a No Asset Report.

11. Therefore, pursuant to Rules 4004(a) and 4007(c) Fed. R. Bankr.P., the deadline for filing an objection to discharge under 11 U.S.C. § 727(a) or dischargeability under 11 U.S.C. § 523(a), as computed using Rule 9006(a) Fed. R. Bankr.P., was January 8, 2006.

12. On December 23, 2005, after the second bankruptcy case had been pending for almost ninety days, counsel for Debtor in the state court cases filed in those cases and served by facsimile on Plaintiffs, Debtor's Motions to Transfer those cases to the Bankruptcy Calendar ("Motions"). (Pl.'s Ex. 4.)

13. Prior to December 23, 2005, Debtor made no attempt to invoke the automatic stay in the state court cases or otherwise provide Plaintiffs with any notice of the pending bankruptcy case. The December 23, 2005 Motions referred to a September 27, 2005, Notice of Chapter 7 Bankruptcy, which had provided notice of the automatic stay, but Plaintiffs did not receive that notice because they were not listed on Schedule F of Debtor's bankruptcy petition and no copy was provided with the December 23, 2005 Motions and notices.

14. On December 23, 2005, Plaintiffs' attorney was out of his office on holiday and did not return until January 3, 2006, when he finally read the state court motions and first learned of the bankruptcy case.

15. The administrative assistant of Plaintiffs' attorney testified that she was responsible for incoming facsimiles. She does not recall the December 23, 2005 Motions specifically, but testified that it is her practice to place incoming correspondence in the recipient's incoming mailbox in his office. The administrative assistant is not an attorney, and does not review the substance of incoming correspondence. Based on her knowledge and training, she did not know of the impending deadline for filing objections, or know to alert Plaintiffs' attorney or another attorney in the office of the deadline.

16. The December 23, 2005 Motions and notice constituted the first actual notice to Plaintiffs' counsel of Debtor's bankruptcy case. However, the motion and notice did not provide specific information about the deadline for objecting to discharge or dischargeability, or refer to the previously held meeting of creditors so as to enable Debtor's counsel to calculate the bar dates (see Finding No. 11) using the Bankruptcy Rules. Moreover, no notice at all was ever served on Plaintiffs.

17. On January 6, 2006, the state court proceedings were placed on the bankruptcy calendar of that court.

18. On January 17, 2006, an order was entered in Defendant's bankruptcy case discharging Debtor under Chapter 7 of the Bankruptcy Code.

19. On December 20, 2006, Plaintiffs each filed in Defendant's related bankruptcy case a Motion to Allow State Court Case to Proceed in the underlying bankruptcy case. Those motions were set for status to allow Plaintiffs to file Adversary proceedings. On January 8, 2007, Plaintiffs filed their separate Adversary Complaints. Treatment of the Plaintiffs' Motions and their Adversary proceedings have been consolidated here.

20. In Count I of their pending Amended Adversary Complaints, Plaintiffs allege that "Defendant committed the intentional tort of sexual assault against the plaintiff for which he is subject to punitive damages," and that those claims should be exempt from discharge pursuant to 11 U.S.C. § 523(a)(6). (Am.Compl. ¶¶ 18–19.)

21. Plaintiffs argue that they did not receive notice of Debtor's bankruptcy in reasonable time to object to dischargeability under 11 U.S.C. § 523(c). (Am.Compl. ¶ 19.)

22. In Count II, Plaintiffs repeat the allegations of sexual assault and request that Debtor's discharge "be denied pursuant to Section 726(c)(d)(e)" [evidently a typographical error intending to refer to § 727(a)(d)(e) ] and Rule 7001(4) Fed. R. Bankr.P. (Am.Compl. ¶ 21.)

23. In Count III, Plaintiffs allege in the alternative that Debtor's failure to list them on Schedule F of his bankruptcy petition and his subsequent declaration concerning the accuracy of the schedules was fraudulent and, therefore, Debtor's discharge should be revoked pursuant to 11 U.S.C. § 727(d)(1). (Am.Compl. ¶¶ 22–23.)

24. Debtor defends on grounds that Plaintiffs' objections to discharge or dischargeability contained in their Adversary Complaints were not timely filed.

25. Debtor also denies the underlying allegations of sexual assault, and denies that the oath regarding the accuracy of his bankruptcy schedules was false and fraudulent.

26. A hearing was held on Plaintiff's pending Motions and their Complaints. The evidence and argument then presented was limited to the issue of whether Debtor's discharge should be revoked, and whether Plaintiffs' objections to discharge and dischargeability were timely filed and, therefore, whether their state court lawsuits should be allowed to proceed to judgment.

27. Statements of fact contained in the Conclusions of Law section shall constitute additional Findings of Fact.

### JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. These adversary complaints are core proceedings under 28 U.S.C. § 157(b)(2)(I) and (J).

### CONCLUSIONS OF LAW

There are two preliminary matters. First, Plaintiffs' Motions to Allow State Court Case to Proceed are still pending in the underlying bankruptcy. Debtor responded to those motions, arguing that they were not timely filed, but for reasons set forth below those objections are overruled.

Plaintiffs cite 11 U.S.C. § 524(e) in their Motions as the statutory basis for requested relief "that the Court enter an order that the Discharge does not stay the Lawsuit." (Mot. to Allow State Ct. Case to Proceed at 2.) That provision does not

supply authority for the relief requested.[1] However, adequate notice was given as to the relief sought and those Motions do properly lie under 11 U.S.C. § 523(a)(3)(B). Therefore, under the latter provision in the context of information learned in the consolidated hearing and for reasons stated below the discharge injunction will be amended to allow the state court cases to proceed, so the Motions will be allowed accordingly and the Adversary proceedings kept pending until state court judgments are entered.

The second preliminary matter concerns Count II of Plaintiffs' Amended Complaints, which contain prayers for relief pursuant to 11 U.S.C. § 726(c)(d)(e). (Am. Compl. ¶ 21.) The pleader evidently meant to refer to provisions of § 727 having to do with revocation of discharges and each Count II is so treated.

There are two substantive issues. The first issue presented in Count I of each Amended Adversary Complaint is whether to allow an unscheduled creditor to file a complaint objecting to discharge or dischargeability subsequent to deadline established by the Bankruptcy Rules when that creditor never received formal notice of the bankruptcy filing or bar date, but her lawyer received actual notice of the bankruptcy case a very short time before the deadline. The underlying debts that Plaintiffs seek to have excepted from discharge pursuant to 11 U.S.C. § 523(a)(6) have not been liquidated by final judgment. Thus, the first issue is whether Plaintiffs' Adversary Complaints pleading

"willful and malicious injury" can proceed to judgment before the bankruptcy court makes a final dischargeability determination.

Finally, Counts II and III of Plaintiffs' Amended Adversary Complaint present the issue as to whether Debtor's discharge can be revoked because of his false oath concerning the accuracy of his bankruptcy schedules which resulted in no notice to Plaintiffs of the bankruptcy, and indirect notice to their counsel only at a very late date.

*Counts II and III: Revocation of Discharge Pursuant to 11 U.S.C. § 727(d)(1)*

■ By failing to list Plaintiffs as unsecured creditors on Schedule F of his bankruptcy petition, Debtor made a false oath when he signed the Declaration Concerning Debtor's Schedules. It is no excuse that Debtor signed the Declaration on the advice of counsel with the belief that his attorney had included such information, or that he did not know the difference between Schedule F and the Statement of Financial Affairs. *See Cannon–Stokes v. Potter,* 453 F.3d 446, 449 (7th Cir.2006) ("Yet bad legal advice does not relieve the client of the consequences of her own acts. A lawyer is the client's agent, and the client is bound by the consequences of advice that the client chooses to follow.").

Moreover, Debtor testified that his medical malpractice insurance provider was covering the cost of defending Plaintiffs' state court lawsuits, but would not cover any judgment against him because his em-

---

1. Under 11 U.S.C. § 524(e), "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." In other words, a creditor may continue to pursue a debt for which multiple individuals are jointly and severally liable, but not against the discharged debtor. That provision is not

a legal basis for objecting to discharge or dischargeability. The exception in 11 U.S.C. § 524(a)(3) applies to certain community property, but Illinois is not a community property state and, therefore, the exception does not apply in this case. Thus, 11 U.S.C. § 524(e) does not provide a legal basis for any relief against Debtor.

ployer failed to purchase a "tail rider" to his insurance policy. Thus, Debtor had a financial motive for attempting to conceal his bankruptcy petition from Plaintiffs.

In addition, Debtor's 2004 Chapter 7 bankruptcy petition was admitted into evidence at trial. (Def.'s Ex. 1.) In it, Plaintiffs were listed, "care of" their attorney, as unsecured creditors on Schedule F of Debtor's petition.[2] Debtor would like to draw the inference that Plaintiffs had reasonable notice of his subsequent Chapter 7 bankruptcy petition filed in 2005, because they were scheduled in the 2004 petition. That argument is absurd. Debtor's 2004 petition was dismissed in November 2004, and Plaintiffs were under no duty to scour the bankruptcy docket on a daily basis to determine whether Debtor had filed a subsequent bankruptcy case. *See In re Eliscu*, 85 B.R. 480, 482 (Bankr.N.D.Ill.1988). In fact, the opposite inference can be drawn. Indeed, as a result of scheduling Plaintiffs on his 2004 petition, Debtor knew where to list Plaintiffs on the schedules to his 2005 petition so that they would receive formal notice of the case and relevant filing deadlines. As outlined above, Debtor had a financial motive for failing to

do so, which tends to prove the fraudulent nature of his false oath. It is therefore concluded that Debtor's false oath constituted fraud.

Moreover, Rule 2002(f)(4) Fed. R. Bankr.P., requires the Clerk of Court to provide notice to all creditors of "the time fixed for filing a complaint objecting to the debtor's discharge pursuant to § 727 of the Code as provided in Rule 4004." Creditors are to receive at least twenty-five days' notice of the time fixed for objecting to discharge under § 727(a). Fed. R. Bankr.P. 4004(a). The Clerk shall mail such notices "to the address shown on the list of creditors or schedule of liabilities, whichever is filed later." Fed. R. Bankr.P. 2002(g)(2).

Neither the Plaintiffs nor their attorney received the required twenty-five days' notice from the Clerk of Court regarding the deadline for filing a complaint pursuant to 11 U.S.C. § 727(a), because Debtor failed to list them on Schedule F of his petition as required by 11 U.S.C. § 521(a)(1)(A) and Rule 1007(a)(1) Fed. R. Bankr.P. Plaintiffs now seek relief under § 727(d)(1):

> A literal interpretation of 11 U.S.C. § 521(a)(1)(A) and Rule 1007(a)(1) Fed. R. Bankr.P. is that debtors must list their individual creditors and not a creditors' representative on Schedule F of the bankruptcy petition. However, formal or actual notice of the Debtor's first bankruptcy case on Plaintiffs' attorney, by listing him on Schedule F of the 2004 petition or faxing the December 23, 2005 Motion to his office, constituted notice to Plaintiffs. *See In re Marino*, 195 B.R. 886, 895 (Bankr.N.D.Ill.1996) ("It is well recognized that an attorney's actual notice of the pendency of a bankruptcy may be imputed to his client if it occurs within the scope of the attorney-client relationship.") (citations omitted); *Western Bank, Santa Fe v. Silver (In re Silver)*, 107 B.R. 328, 329 (Bankr.D.N.M. 1989).

---

**2.** Section 521(a)(1)(A) of Title 11 requires debtors to file a list of creditors. According to Rule 1007(a)(1) Fed. R. Bankr.P., "In a voluntary case, the debtor shall file with the petition a list containing the name and address of each entity included or to be included on Schedules D, E, F, G, and H as prescribed by the Official Forms." Official Form B6F, commonly referred to as Schedule F. Creditors Holding Unsecured Nonpriority Claims, requires debtors to "[s]tate the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition." The list referred to in Rule 1007(a)(1) Fed. R. Bankr.P. is used to create the so-called "Creditor Matrix" that the Clerk of Court uses to provide formal notice pursuant to Rule 2002(g).

On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—such discharge was obtained through fraud of the debtor, *and the requesting party did not know of such fraud until after the granting of such discharge. . . .*

(Emphasis added). A request to revoke discharge must be filed within one year from the date of discharge. 11 U.S.C. § 727(e)(1).

■ The requirements of 11 U.S.C. § 727(d)(1) are generally read strictly in favor of the debtor. "Revocation of discharge is a harsh measure and runs contrary to the general policy of the Bankruptcy Code of giving Chapter 7 debtors a 'fresh start.'" *State of India v. Kaliana (In re Kaliana)*, 202 B.R. 600, 603 (Bankr. N.D.Ill.1996). Thus, the requirement that the requesting party not know of the alleged fraud until after the granting of discharge is generally to be construed strictly. Bankruptcy courts have recognized one exception to the strict application of 11 U.S.C. § 727(d)(1). "Where a creditor claims to have learned of the fraud after the time period to object to discharge but prior to the discharge itself, courts nevertheless generally permit the party to proceed under § 727(d)(1). . . . In those circumstances, the discharge date will be imputed to have occurred on the same day as the expiration of the period for objection to discharge." *In re Habash*, 360 B.R. 775, 778 (N.D.Ill.2007) (citations omitted).

■ Plaintiffs allege that the discharge was obtained by fraud in that the debtor intentionally failed to list any of the numerous lawsuits against him in the list of creditors and plaintiff did not know of the fraud until after the discharge was granted. (Am.Compl. ¶ 22.) Debtor served his

Motions to Transfer to Bankruptcy Calendar on Plaintiffs' counsel by facsimile on December 23, 2005. Plaintiffs' attorney read those Motions on January 3, 2006, when he returned to his office after the holidays. The deadline for objecting to discharge was January 8, 2006, and the discharge was entered on January 17, 2006. Plaintiffs through their counsel knew of the bankruptcy, but only had a few days to learn of the alleged false and fraudulent oaths before Debtor received his discharge. Because Plaintiffs had only a short time to learn of the alleged fraud before the deadline for objecting to discharges therefore, the exception under § 727(d)(1) could well apply. Fraudulent intent by Debtor and his bankruptcy counsel to avoid noticing Plaintiffs in time to act must be inferred, and the *Habash* reasoning could be followed. However, a more appropriate remedy discussed below is available to Plaintiffs and therefore Counts II and III will be dismissed under a strict application of § 727(d)(1) so as to give Plaintiffs only the relief they should have received if proper notice had been given—their day in court to pursue their claims.

*Count I: Objection to Dischargeability Pursuant to 11 U.S.C. § 523(a)(6)*

■ Plaintiffs have an alternative remedy under 11 U.S.C. § 523(c)(1) and § 523(a)(3)(B).

Under § 523(c)(1):

Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under

paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section. Plaintiffs' state law claims against Debtor sound in intentional tort for sexual assault and, therefore, any recovery on those alleged claims may constitute a nondischargeable "debt—for willful and malicious injury by the debtor to another entity. . . ." 11 U.S.C. § 523(a)(6). Pursuant to Rule 4007(c) Fed. R. Bankr.P., creditors have sixty days from the first meeting of creditors under 11 U.S.C. § 341 to file an objection to discharge under 11 U.S.C. § 523(c)(1). The Clerk of Court "shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002." Rule 4007(c) Fed. R. Bankr.P. However, as set forth above, Plaintiffs did not receive any notice of the deadline for objecting to dischargeability from the Clerk of Court as required by Rule 4007(c) Fed. R. Bankr.P., because Debtor did not list Plaintiffs as unsecured creditors on Schedule F of his bankruptcy petition. In other words, the Bankruptcy Clerk did not know to notice them.

Nevertheless, 11 U.S.C. § 523(a)(3)(B) excepts from discharge:

[A]ny debt . . . neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit . . . if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely requests for a determination of dischargeability of such debt under one of such paragraphs, *unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.*

(Emphasis added). In addition, Rule 4007(c) Fed. R. Bankr.P., allows a party in interest to move for cause for an extension of time to file an objection to dischargeability under 11 U.S.C. § 523(c)(1). That motion must be filed before the time for objecting has expired. Fed. R. Bank. P. 4007(c). Thus, the issue presented is whether Plaintiffs' received actual knowledge of Debtor's bankruptcy "in time to permit . . . timely request for a determination of dischargeability" or in time to seek an extension.

■ The parties in this case each rely on the protection of procedural technicalities that underlie fundamental policies of the bankruptcy system. Rule 9006(b)(3) Fed. R. Bankr.P. limits the discretion of the bankruptcy court to enlarge the time for taking action under Rule 4007(c). Thus, Rules 4007(c) and 9006(b)(3) Fed. R. Bankr.P. reflect a strong Congressional intent to promote finality in the bankruptcy process and "to prevent debtors from being harassed by creditors after their claims had been discharged in bankruptcy." *Fed. Deposit Ins. Corp. v. Kirsch (In re Kirsch),* 65 B.R. 297, 300 (Bankr. N.D.Ill.1986). On the other hand, the sixty-day deadline for filing objections under 11 U.S.C. § 523(c)(1) as promulgated by Rule 4007(c) Fed. R. Bankr.P. is likely the shortest statute of limitations in American jurisprudence and, therefore the facts in this case must be balanced against the due process requirements of the Fifth Amendment. "When applying the Bankruptcy Code or its Rules strictly would deny a claimant due process rights in violation of the Fifth Amendment, then the Constitution must take precedence and the Code or its rules must be set aside or modified in their application." *In re Marino,* 195 B.R. at 891 (citing *In re Walker,* 149 B.R. 511, 513 (Bankr.N.D.Ill.1992)).

■ A fundamental component of due process is the receipt of "reasonable notice." The Supreme Court has defined reasonable notice as "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Pursuant to § 523(a)(3)(B), actual notice may be reasonable notice, *Carpet Servs. v. Hutchison (In re Hutchison)*, 187 B.R. 533, 535 (Bankr.S.D.Tex.1995), but the court must consider the totality of the circumstances in determining whether notice was reasonable for due process purposes. *People ex rel. Hartigan v. Peters*, 871 F.2d 1336, 1340 (7th Cir.1989). One circumstance to consider in evaluating the sufficiency of notice is whether alleged inadequacies in the notice prejudiced the creditor. *Id.* Another is whether notice was given to the creditor in time to take meaningful action in response to the impending deprivation of rights. *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 13, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Chicago Cable Commc'ns v. Chicago Cable Comm'n*, 879 F.2d 1540, 1545 (7th Cir.1989) ("Adequate notice both apprises the individual of the hearing and permits adequate preparation to present objections.").

In many cases where a creditors' attorney received actual notice of the bankruptcy case before the deadline for objecting to dischargeability, the opinions have held "that the plain meaning of [§ 523(a)(3)(B) ], which permits general knowledge of a case to substitute for particular knowledge of the bar date, [does not] violate constitutional due process." *GAC Enters., Inc. v. Medaglia (In re Medaglia)*, 52 F.3d 451, 454 (2d Cir.1995); *see also In re Marino*, 195 B.R. at 893–94 (citing additional authority). However, the facts surrounding the Debtor's intentionally false oath and receipt by Plaintiffs' attorney of very short actual notice must distinguish this case from other precedents.

■ In both *In re Medaglia* and *In re Marino*, debtors' attorneys received actual notice approximately sixty days before the deadline for objecting to dischargeability. 52 F.3d at 453; 195 B.R. at 890. In contrast, in this case the Defendant's state court Motions to Transfer to Bankruptcy Calendar were faxed to Plaintiffs' attorney on December 23, 2005, but he was out of the office and did not read them until January 3, 2006. In this respect, the facts here are similar to *Scholar v. Pacific Bell*, 963 F.2d 264 (9th Cir.1992). In that case, the plaintiff's daughter signed for the notice that was sent by certified mail on November 1, but the plaintiff claimed not to have read the notice until between November 8 and 15. *Id.* at 267–68. The court found that notice was received on the date that plaintiff's daughter signed for it. *Id.* at 268. Lack of diligence in reading and responding to correspondence is not by itself a justification for tolling the statute of limitations. *Id.* (quoting *Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1242 (11th Cir.1982) ("There is no reason why a plaintiff should enjoy a manipulable open-ended time extension which could render the statutory limitation meaningless.")). Thus, Plaintiffs received actual notice to their attorney of Debtor's bankruptcy on December 23, 2005, sixteen days before the deadline for objecting to dischargeability, when facsimile notice was received by their attorney's office.

However, this does not change the conclusion that Plaintiffs did not then receive adequate or reasonable notice of Debtor's bankruptcy case. In reaching this conclusion, both the purposes sought to be served by the notice requirement contained in the Bankruptcy Rules, and also the circumstances surrounding Plaintiffs' actual receipt of information about the bankruptcy filing (but without any information about the bar date) have been con-

sidered. Actual notice that Plaintiffs's lawyer did receive in his office on December 23, 2005, was not reasonable insofar as it was not provided in time for him to respond to the impending deprivation of Plaintiffs' right to object to dischargeability under 11 U.S.C. § 523(c)(1), and that notice gave no warning of the imminent bar dates. This resulted in substantial prejudice to Plaintiffs because absent an extension of time to file their objections to dischargeability, they are enjoined pursuant to the discharge injunction under 11 U.S.C. § 524(a)(2) from prosecuting their state law claims. *See In re Reese*, 133 B.R. 245, 247 (Bankr.M.D.Fla.1991) (describing the myriad ways an unscheduled creditor suffers a deprivation of rights from lack of notice).

This case is more like *In re Walker*, where twenty days' notice of the bankruptcy was held to be unreasonable under the Fifth Amendment and the Bankruptcy Code. 149 B.R. at 515. In this case, notice of Debtor's bankruptcy was received in the office of Plaintiffs' counsel in his absence sixteen days prior to the deadline for filing objections under 11 U.S.C. § 523(c)(1). When actual notice was finally read by Plaintiffs' lawyer, their state court lawsuits and Debtor's bankruptcy had been proceeding simultaneously for almost ninety days. Debtor provided no reasonable explanation why his bankruptcy and state court attorneys did not provide Plaintiffs with any notice of the automatic stay or even assert the stay directly in state court until December 23, 2005. Indeed, it is inferred from timing of the December 23, 2005 Motions that Debtor and his attorneys hoped that the notice would be neglected until after the holidays, and therefore that Plaintiffs would fail to object timely to discharge or dischargeability. It bears repeating that litigants are bound by their counsels' acts and omissions within the course of representation. *Cannon–*

*Stokes*, 453 F.3d at 446. Debtor cannot complain that his attorneys' omission to serve timely notice or acts in either deliberately or carelessly providing eleventh hour notice is now held to violate due process rights of Plaintiffs and provides part of the basis for allowing the state court suits to proceed.

 Moreover, the situation here arises from Debtor's own failure to schedule Plaintiffs properly in the first place and from his false oath motivated by his financial interest in not giving timely notice to Plaintiffs. The doctrine of equitable estoppel "allows a person's act, conduct or silence when it is his duty to speak, to preclude him from asserting a right he otherwise would have had against another who relied on that voluntary action." *In re Hawkins*, 377 B.R. 761, 770 (Bankr. S.D.Fla.2007) (quoting *First Union Commer. Corp. v. Nelson, Mullins, Riley & Scarborough*, 81 F.3d 1310, 1317 (4th Cir. 1996)). The doctrine applies in bankruptcy when: (1) the party estopped knew the relevant facts; (2) the party estopped intended for its conduct to be acted or relied upon, or the party acting had the right to believe the conduct was so intended; (3) the party acting was ignorant of the true facts; and (4) the party acting relied on the conduct to its injury. *Id.; see also In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir.1994). In this case, Debtor knew of Plaintiffs' state court lawsuits and, therefore, of their status as unsecured creditors holding unliquidated claims. Debtor intended his act of signing Declaration Concerning Debtor's Schedules to be relied upon in providing formal notice of his bankruptcy case. Plaintiffs and their attorney were ignorant of Debtor's bankruptcy petition in time to enable their objections in a timely manner. Plaintiffs were entitled to rely on the procedures required by statute and rules in

bankruptcy for receiving formal notice, and were injured by Debtor's failure to list them on Schedule F of his petition. Thus, the four estoppel factors apply, and Debtor is estopped from asserting the bar date as a defense to Plaintiffs' objections to dischargeability.

██ In addition to the timing of the notice, one must look at the content of the notice that Plaintiffs' received, specifically whether it provided some benchmark for estimating the deadline for objecting to dischargeability. According to the court in *In re Medaglia,* "provisions of the Code do enable a creditor to estimate the bar date with relative accuracy based only on knowledge of when a Chapter 7 petition was filed." 52 F.3d at 455. Rule 2003(a) Fed. R. Bankr.P. requires the first "meeting of creditors to be held no fewer than 20 days and no more than 40 days after the order for relief," and Rule 4007(c) Fed. R. Bankr.P. sets a deadline for objecting to discharge or dischargeability as sixty days after the date set for the first meeting of creditors.

A Chapter 7 case without assets can be administered in as little as ninety days from start to finish. Thus, even a short variance in the date the § 341 Meeting of Creditors can have a substantial effect in estimating filing deadlines. To be safe, a potential creditor ought to assume that the first meeting of creditors was held at the earliest possible lawful date following the bankruptcy filing. In this case, that would have meant that the first meeting of creditors could have been set as early as October 17, 2005, which would have set the deadline for objecting to discharge or dischargeability as December 19, 2005,[3] in which case the December 23, 2005 Motion would have been received after the bar date and, therefore, would have been un-

reasonable *per se.* Thus, in applying the *In re Medaglia* method to the case at bar, notice would have been reasonable as long as the first meeting of creditors was held no fewer than twenty-four days after the order for relief. But the Bankruptcy Rules provide for much longer notice, and Plaintiffs here will not be held in this case to that standard of guesswork.

As this hypothetical demonstrates, there are risks, depending on one's assumptions about when the first meeting of creditors was set, to using the *In re Medaglia* method for estimating the bar date. In arguing whether actual notice was reasonable, creditors will always argue that they assumed the first meeting of creditors was set for the earliest possible date thereby shortening the time for objecting to discharge or dischargeability, while debtors will always argue for the latest possible date. Thus, this opinion will not apply here the reasoning in *In re Medaglia* that the burden of a rule requiring creditors to estimate the bar date using the Bankruptcy Rules "is minimal and ... does not deprive unlisted creditors of their opportunity to be heard," 52 F.3d at 455. Meaningful actual notice should refer to the deadline dates, or at least to the date of first § 341 meeting of creditors as the benchmark for calculating the time to object to under 11 U.S.C. § 523(c) and Rule 4007(c) Fed. R. Bankr.P. *See In re Walker,* 149 B.R. at 515. To hold otherwise, would require too many assumptions about what Plaintiffs could have or should have done in the short period of time before January 8, 2006.

Finally, it should be noted that counsel who practice in state courts do not necessarily practice in bankruptcy cases and cannot be assumed to be qualified to read

---

**3.** The sixtieth day fell on a Saturday, so the deadline would have been extended to the

following Monday pursuant to Rule 9006(a) Fed. R. Bankr.P.

docketed records by computer or know the technical bankruptcy requirements that may affect their cases. Therefore, they usually need some reasonable time to get information from our court files and understand the meaning of it. Counsel and the Plaintiffs were intentionally deprived of that opportunity.

*Bankruptcy Court's Subject Matter Jurisdiction to Liquidate Plaintiffs' Claims*

■ Having found that Plaintiffs did not receive reasonable notice and, therefore, that their objections to dischargeability are deemed timely filed, it must be determined whether they are entitled to a nondischargeability order. Pursuant to 11 U.S.C. § 523(a)(6), "A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—for willful and malicious injury by the debtor to another entity or to the property of another entity." Thus, in order for their state court claims to be excepted from discharge, Plaintiffs must prove that they suffered an injury and that the injury was a result of Debtor's willful and malicious actions. *Swarcheck v. Manidis (In re Manidis)*, No. 93–A–0181, 1994 WL 250072, at *2 (Bankr.E.D.Pa. May 27, 1994); *Bosch v. Bumann (In re Bumann)*, 147 B.R. 44, 47 (Bankr.D.N.D.1992). Plaintiff must prove each of these elements by a preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 287–88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ However, in this case the underlying debt has not been liquidated. According to 28 U.S.C. § 157(b)(5), "The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district in which the claim arose, as determined by the district court in which the bankruptcy is pending." Thus, the bankruptcy court lacks subject matter jurisdic-

tion to liquidate Plaintiffs' state court injury tort claims. *In re Manidis*, 1994 WL 250072, at *6. Nevertheless, "an objection to the legal validity of a personal injury tort claim does not fall within the personal injury exception to the core bankruptcy jurisdiction conferred by [28 U.S.C. § 157(b)(5) ]," *In re UAL Corp.*, 310 B.R. 373, 383 (Bankr.N.D.Ill.2004), and therefore, the majority of courts that have addressed this issue have heard enough evidence to prove a "debt" that was the result of a "willful and malicious injury" beyond a preponderance of the evidence. 11 U.S.C. § 523(a)(6); *see Ridley v. Holt (In re Holt)*, 310 B.R. 675, 678–79 (Bankr. N.D.Tex.2004); *In re Manidis*, 1994 WL 250072, at *1–6; *In re Bumann*, 147 B.R. at 46–47. The reasoning behind this approach is that if the state civil action were to be litigated first, the parties would nevertheless have to return to the bankruptcy court to determine dischargeability of the creditor's claim, unless the debtor prevailed in the state action. 18 A.L.R. Fed.2d 465 (2007). On the other hand, if the state court action went forward first, collateral estoppel of certain findings in that court in the creditor's favor could apply in the bankruptcy court proceeding. *Id.*

■ Given the limitations on the bankruptcy court's subject matter jurisdiction to liquidate Plaintiffs' state law personal injury tort claims, the evidence presented in this adversary was limited to the timeliness of Plaintiffs' objections to dischargeability. Thus, Plaintiffs' will be allowed to stand on their adversary complaints as objections to dischargeability and to prosecute their personal injury state court claims to judgment. If they prevail, they will have to return to the bankruptcy court for a determination of dischargeability, but specific state court findings may have a collateral estoppel effect if such detailed

findings are made by jury or court, thereby saving trial time if and when they return.

## CONCLUSION

The Bankruptcy Code and Rules establish precise requirements to protect both debtors and creditors. Debtors must schedule known creditors on truthful sworn schedules so that they will receive formal notice in order to protect their rights by filing timely objections to discharge or dischargeability. When they receive such notice, they must act within the time frame (or move to have deadlines extended before they expire) or lose their right to object. However, the Bankruptcy Code and Rules cannot be read to countenance a debtor's disregard of the duty to schedule all creditors and make a truthful declaration concerning the accuracy of schedules. Strict compliance with those requirements is necessary to provide creditors the chance to make timely objections under 11 U.S.C. § 523(c) and Rule 4007(c) Fed. R. Bankr.P.

Debtor's false oath concerning the accuracy of his bankruptcy schedules, his financial motive for failing to schedule Plaintiffs, and the skeletal last-minute notice of his bankruptcy case all imply a deliberate effort by Debtor and his bankruptcy and state court lawyers to hinder Plaintiffs' ability to protect their rights in bankruptcy. Fraudulent intent of Debtor is inferred from the facts here.

The totality of circumstances show that the actual notice was too late and unreasonable to satisfy due process rights of Plaintiffs. Plaintiffs will be divested of their rights and greatly prejudiced if they are not allowed an extension of time to object to dischargeability and have their day in court on their serious allegations made against Debtor. Any prejudice to Debtor in allowing an extension results from his failure to list Plaintiffs as unsecured creditors on Schedule F of his bankruptcy petition and from his lawyer's failure to serve earlier notice. No weight can be given to Debtor's testimony that he relied on his bankruptcy attorney and did not carefully read his Schedule F or understand the difference between Schedule F and the Statement of Financial Affairs. Debtor is an educated man, and was responsible for reading every part of the Bankruptcy Petition that he declared true and correct under penalty of perjury. He is bound by that declaration whether he read what he signed or not.

Accordingly, a separate order will be entered pursuant to Rule 9021 Fed. R. Bankr.P. allowing the pending Motions to Allow State Court Case to Proceed. Counts II and III of Plaintiffs' Amended Adversary Complaints will be dismissed.

Count I in each Plaintiffs' Adversary proceeding will be allowed to stand as objection to dischargeability under 11 U.S.C. §§ 523(a)(3)(B), 523(a)(6), and 523(c)(1), and the discharge injunction will be amended to allow the state court cases to proceed to final judgment. The pending Motion of Plaintiffs will be allowed accordingly.

Depending on results in the state court cases, Plaintiffs may return to the bankruptcy court to seek judgments of nondischargeability in these Adversary proceedings. Status calls will be held periodically in the Adversaries until the state court judgments are entered.