# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-3358

IN RE:

BRUCE S. SMITH, M.D.,

*Debtor.*

TRINA TIDWELL and SANDRA STERLING-AHLLA,

*Plaintiffs-Appellees,*

*v.*

BRUCE S. SMITH, M.D.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CV 46—**Harry D. Leinenweber,** *Judge.*

ARGUED MAY 14, 2009—DECIDED SEPTEMBER 23, 2009

Before ROVNER and EVANS, *Circuit Judges*, and VAN BOKKELEN, *District Judge*.*

ROVNER, *Circuit Judge*. When defendant-appellant Dr. Bruce S. Smith filed a Chapter 7 bankruptcy petition in September 2005, he failed to include appellees Trina Tidwell and Sandra Sterling-Ahlla on his schedule of creditors holding unsecured, nonpriority claims. Tidwell and Sterling-Ahlla had sued Smith in state court for sexual assault. Because Smith omitted Tidwell and Sterling-Ahlla from his list of creditors, neither of them was sent notice of his bankruptcy petition. Their counsel learned of Smith's pending bankruptcy only weeks before his discharge and took no action at that time.

Roughly one year after the discharge, Tidwell and Sterling-Ahlla (whom we shall also refer to as the "plaintiffs") filed motions asking the bankruptcy court for leave to proceed with their lawsuits against Smith, along with adversary complaints asking the court to declare their claims against Smith nondischargeable pursuant to 11 U.S.C. § 523(a)(3)(B) and (a)(6). Following an evidentiary hearing, the court granted their request in part. The court found that Smith had deliberately and fraudulently failed to schedule the plaintiffs' claims and that their counsel had not been put on notice of the bankruptcy in time enough to permit them to seek a declaration of nondischargeability prior to Smith's discharge.

---

* The Honorable Joseph S. Van Bokkelen, of the Northern District of Indiana, sitting by designation.

*Tidwell v. Smith (In re Smith)*, 379 B.R. 315 (Bankr. N.D. Ill. 2007). The court therefore granted Tidwell and Sterling-Ahlla leave to proceed with their suits against Smith in state court and reserved judgment as to whether their claims were in fact nondischargeable pursuant to section 523(a)(6) until such time as they prevailed in the state-court litigation. Smith appealed to the district court, which affirmed the bankruptcy court's decision. *Smith v. Tidwell (In re Smith)*, No. 08 C 46, 2008 WL 4067306 (N.D. Ill. Aug. 27, 2008).

Smith again appeals, contending that the evidence does not support the bankruptcy court's findings that he deliberately omitted Tidwell and Sterling-Ahlla from his schedule of unsecured creditors and that they did not become aware of his bankruptcy in time to seek a declaration of nondischargeability before the bankruptcy proceeding was closed. We agree with the lower courts that the eleventh-hour notice of the bankruptcy that Tidwell and Sterling-Ahlla received did not afford them sufficient time in which to protect their rights before Smith was discharged. Their post-discharge complaints were therefore timely, and we affirm on that basis without reaching the question of whether Smith omitted Tidwell and Sterling-Ahlla from his list of unsecured creditors with fraudulent intent.

**I.**

Tidwell and Sterling-Ahlla separately filed suit against Smith in the Circuit Court of Cook County, Illinois on December 18, 2003. Each alleged that Smith, a physician

specializing in obstetrics and gynecology, had unlawfully engaged in sexual intercourse with her during a routine prenatal examination.

Smith first sought the protection of Chapter 7 in a petition filed on June 24, 2004. By the terms of 11 U.S.C. § 521(1) and Fed. R. Bankr. P. 1007(a)(1), he was required to identify all creditors holding unsecured, nonpriority claims on Schedule F of his petition. The clerk of the bankruptcy court in turns sends notice of the filing of a bankruptcy petition to all identified creditors, including those on Schedule F. *See* Fed. R. Bankr. P. 2002. Smith did not list Tidwell and Sterling-Ahlla by name on that schedule, but he did list their attorney, Darryl Robinson, indicating (incorrectly) that Robinson represented the unidentified plaintiffs in a "medical malpractice claim." Bankr. No. 04-23845, Doc. No. 1 at 6. Robinson, presumably, received notice of the petition as a result: the service list for the notice of bankruptcy mailed on June 25, 2004 indicates that he was among those creditors who were served with notice. *Id.*, Doc. No. 5 at 3.[1] However, the bankruptcy court dismissed the 2004 petition on the motion of the United States Trustee, who argued that in view of Smith's ongoing employment, substantial income, and unreasonably high monthly expenses, discharging his debts pursuant to Chapter 7 rather than

---

[1] Although the statute and bankruptcy rules require a debtor to identify his creditors by their own names, rather than by their representatives, the bankruptcy court found that notice to Robinson constituted notice to his clients. 379 B.R. at 324 n.2.

funding a repayment plan pursuant to Chapter 13 would amount to a "substantial abuse" of Chapter 7's provisions. *See* 11 U.S.C. § 707(b). The case was dismissed on November 23, 2004, and the proceeding was closed and the trustee was discharged on January 31, 2005.

After Smith's financial situation deteriorated further with the loss of his job, he filed a second Chapter 7 bankruptcy petition on September 26, 2005. The attorney who prepared Smith's second petition was not the same one who prepared his first petition. However, Smith's new counsel worked for a firm that specializes in bankruptcy, he was experienced with Chapter 7 cases, and he had a copy of the 2004 petition which he referenced in preparing the new petition. The lawsuits filed by Tidwell and Sterling-Ahlla were identified in the Statement of Financial Affairs attached to the 2005 petition, but neither they nor their attorney was listed on Schedule F. The bankruptcy clerk mailed notices to the scheduled creditors on September 27, 2005, indicating that Smith had filed a bankruptcy petition, noting the automatic stay of collection and other actions against the debtor, and setting forth a number of important dates, including that of the creditors' meeting (November 8, 2005), and the deadline for filing a complaint objecting to the discharge of the debtor or to determine the dischargeability of any debt (January 9, 2006). As a result of their omission from Schedule F, neither Tidwell nor Sterling-Ahlla (nor their attorney) received that notice. Prior to December 23, 2005, Smith made no attempt to invoke the automatic stay in the state-court suits filed by Tidwell and Sterling-Ahlla, and he did not otherwise notify the state court, Tidwell, or Sterling-Ahlla of the stay.

Section 523(a)(6) of the Bankruptcy Code exempts from discharge any debt "for willful or malicious injury by the debtor to another entity or to the property of another entity," and because the lawsuits filed by Tidwell and Sterling-Ahlla allege that Smith sexually assaulted them, their claims against Smith are potentially nondischargeable under that provision. *See generally Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S. Ct. 974, 977 (1998); *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994); *see also*, *e.g.*, *In re Fors*, 259 B.R. 131, 137 (8th Cir. B.A.P. 2001); *Pettey v. Belanger ex rel. Belanger*, 232 B.R. 543, 546-47 (D. Mass. 1999). A creditor who holds such a debt is obliged to file a proof of claim and a timely request that the bankruptcy court determine the debt to be nondischargeable. 11 U.S.C. § 523(c)(1); *see also* § 523(a)(3)(B); Fed. R. Banker. P. 4007(a). The failure to take that step will result in the discharge of the claim. § 523(c)(1); *In re Mendiola*, 99 B.R. 864, 866 (Bankr. N.D. Ill. 1989). Bankruptcy Rule 4007(c) allows a creditor sixty days from the first date set for the creditors' meeting in which to file a complaint to determine the dischargeability of a debt. In this case, the creditors' meeting was set for November 8, 2005; therefore, the presumptive deadline for seeking a determination that a debt was nondischargeable was January 8, 2006 (sixty-one days after the creditors' meeting, as the sixtieth day fell on a Sunday), *see* 379 B.R. at 321 ¶ 11, although the notice to creditors identified the deadline as January 9, 2006. Because they were omitted from Smith's Schedule F, neither Tidwell nor Sterling-Ahlla received notice of the creditors' meeting, and as of January 9, 2006, they had

taken no steps to have their claims against Smith declared nondischargeable. The creditors' meeting on November 8, 2005, resulted in a no-asset report by the trustee. On January 17, 2006, the bankruptcy court issued a discharge order, and on January 23, 2006, the Chapter 7 proceeding was closed. Pursuant to 11 U.S.C. § 727(b), that order discharged Smith from all prepetition debts except as provided in section 523, which sets forth the various categories of debts which are exempt from discharge. The discharge also operated as an injunction against the commencement or continuation of any action to collect from Smith any debt from which he was discharged as a result of the bankruptcy proceeding. *See* 11 U.S.C. § 524(a)(2).

Tidwell and Sterling-Ahlla were first placed on notice of Smith's bankruptcy in late December 2005, when the attorneys defending Smith in their lawsuits filed motions asking the state court to transfer the suits to that court's bankruptcy calendar. Copies of these motions were served by fax on Robinson, the attorney representing Tidwell and Sterling-Ahlla, on December 23, 2005, the day after they were filed. Robinson was out of town on December 23, and he remained unaware of the motions until he returned to his office on or about January 4, 2006. Beyond stating generally that Smith had filed a bankruptcy petition and that notice of the bankruptcy had been issued, the motions did not provide any information about the status of the bankruptcy—e.g., when or whether there had been a creditors' meeting or by what date objections to the dischargeability of a debt were due. The state court granted Smith's motion on

January 6, 2006, and the two lawsuits were placed on dormant status on the court's bankruptcy calendar.

Just shy of a year later, on December 20, 2006, Tidwell and Sterling-Ahlla filed motions with the bankruptcy court seeking a declaration that Smith's discharge had no effect on their lawsuits and that they were free to proceed against Smith in state court. The motions noted that because Smith had omitted Tidwell and Sterling-Ahlla from his list of unsecured creditors despite knowing of their suits, they remained ignorant of his bankruptcy petition until he asked the state court to transfer their suits to the bankruptcy calendar. The bankruptcy court continued the hearing on the motions in order to allow Tidwell and Sterling-Ahlla to prepare adversary complaints against Smith, which they filed on January 8, 2007. As amended, the complaints alleged that because Smith had committed the intentional tort of sexual assault and was subject to punitive damages, their claims were exempt from discharge pursuant to section 523(a)(6) and that they were entitled to a declaration to that effect. Alternatively, the complaints sought relief under section 727, which in relevant part permits a creditor within one year of the discharge to ask that the discharge be revoked on the ground that it was obtained through the debtor's fraud. *See* § 727(d)(1) and (e)(1).[2] The bankruptcy court denied Smith's motion to

---

[2]  Although the complaints also cited section 726 of the Bankruptcy Code, it was obvious, as the bankruptcy court recog-

(continued...)

dismiss the complaints as untimely and set the complaints and the motions for leave to proceed with the state-court lawsuits down for a hearing on the merits.

The court subsequently received testimony regarding both the omission of Tidwell and Sterling-Ahlla from the list of Smith's unsecured creditors and the notice that their attorney, Robinson, had received in December 2005 regarding the request to transfer their suits to the state court's bankruptcy calendar. On the latter point, Chykola Jones, the office clerk at Robinson's law firm, testified that it was her practice to place incoming correspondence, including faxes, on the recipient's desk. Jones also testified that she is not an attorney and has not worked for attorneys who practiced bankruptcy law, and thus would not have appreciated the significance of the motions to transfer that were faxed to Robinson. Smith's bankruptcy attorney, Nathaniel Sinn, then testified regarding the preparation of Smith's second bankruptcy petition. At the time he prepared that petition in 2005, Sinn worked for the Chicago office of Legal Helpers, a firm that specializes in consumer bankruptcies. Although Sinn had been practicing law for less than a year, and had been working on bankruptcy matters for only seven or eight months, he had helped to prepare several hundred Chapter 7 petitions in that time. Typically, a law clerk or legal assistant in the office would prepare

---

[2] (...continued)

nized, that the plaintiffs meant to rely on section 727, which deals with the discharge of the debtor. 379 B.R. at 323.

a first draft of the petition, the draft would then be sent to the client for corrections, and then Sinn would meet with the client to review the revised draft before the petition was signed and filed. Sinn understood that Tidwell and Sterling-Ahlla, as unsecured creditors of Smith, should have been included in Schedule F. He further testified that when a debtor has filed a previous bankruptcy petition, he will compare that petition with the one he is working on; and Sinn recalled that he had a copy of Smith's 2004 petition and schedules, which of course listed Robinson as the plaintiffs' representative. He also reviewed the completed petition with Smith before Smith signed it. In the course of that review, Sinn went through the listed creditors and asked Smith whether there were any others that had not been listed; had Smith identified anyone else, he would have added them to the list of creditors. Sinn testified that Smith never asked him to withhold any creditors from the petition, and he would not have done so had Smith asked. Sinn could not explain why, in preparing the 2005 petition, the suits filed by Tidwell and Sterling-Ahlla were included in the Statement of Financial Affairs but neither Tidwell nor Sterling-Ahlla were identified as unsecured creditors in Schedule F. He testified that the omission was "just an error" on his part, R. 5 Ex. A at 31, and not a deliberate act of fraud or deception. He attributed the mistake to the heavy workload that he and his firm were experiencing as debtors rushed to file for bankruptcy before the less consumer-friendly provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 took effect in October 2005. Finally, Smith

himself testified. Smith acknowledged that he had the opportunity to and did review his second bankruptcy petition before it was filed. Like Sinn, Smith denied that the omission of Tidwell and Sterling-Ahlla from Schedule F reflected an effort to hide their claims. Smith said that he did not appreciate the significance of the fact that Tidwell and Sterling-Ahlla had been omitted from Schedule F. He relied on Sinn to prepare the petition and make the appropriate disclosures; and it was his understanding that everything that had been disclosed on his first petition was included in the second. In response to questions posed by the court, Smith disclosed that his former employer had failed to purchase an insurance "tail rider" extending his claims-made coverage for medical malpractice. Although Smith's insurer was providing him with a defense to the suits filed by Tidwell and Sterling-Ahlla, it was his understanding that he alone would be liable to pay any judgment entered against him in those suits.

After hearing the evidence, the bankruptcy court concluded that the plaintiffs were entitled to proceed in state court against Smith, and it entered an order to that effect. Two key findings led the court to that conclusion.

First, the court found that Smith's omission of Tidwell and Sterling-Ahlla from the Schedule F he filed was deliberate rather than inadvertent. When Smith signed the 2005 petition, he subscribed to an oath that he had read the schedules included with the petition and that they were true and correct to the best of his knowledge. 379 B.R. at 320 ¶ 6. In fact, Schedule F was incomplete,

and because Smith was aware of the state-court litiga-
tion, had mentioned that litigation in his Statement of
Financial Affairs, had listed the attorney representing
Tidwell and Sterling-Ahlla in the Schedule F he filed
in support of his 2004 bankruptcy petition, and had a
financial motive for omitting the litigation from Schedule
F (as it was unlikely that his insurer would cover any
judgment entered against him), the court deemed Smith's
oath to be "intentionally false." 379 B.R. at 320 ¶ 7. The
court rejected attorney Sinn's testimony that the
omission of Tidwell and Sterling-Ahlla resulted from a
simple error on his part. The court pointed out that Sinn
was knowledgeable and experienced in the preparation
of Chapter 7 bankruptcy petitions, that he typically
consulted the Schedule F filed with a prior bankruptcy
petition in preparing a second one, that he always re-
viewed the Statement of Financial Affairs before
finalizing the petition, and that he had included the suits
Tidwell and Sterling-Ahlla had filed in the Statement of
Financial Affairs. In view of those facts, the court found it
implausible that the failure to also include the suits on
Schedule F was a mere oversight. *Id.* at 320-21 ¶ 8.

Second, although the plaintiffs' counsel, Robinson, did
receive notice of the 2005 bankruptcy before the deadline
for objecting to the dischargeability of any debt expired
and before Smith was granted a discharge, the court
deemed the notice too late and insufficiently enlightening
to obligate Robinson to act at that time. *Id.* at 327-30. The
court acknowledged that, pursuant to section 523(a)(3)(B),
an unscheduled, nondischargeable debt will be dis-
charged so long as the creditor had notice or actual knowl-

edge of the bankruptcy in time to object to the discharge-
ability of the debt. *Id.* at 326. The court summarily
rejected as "absurd" Smith's assertion that because the
plaintiffs' claims were scheduled in his 2004 bankruptcy
petition, Tidwell and Sterling-Ahlla somehow should
have known of his 2005 petition, notwithstanding the
fact that they were never served with notice of the
second petition as a result of their omission from his list
of creditors. *Id.* at 324. On the other hand, the court did
agree that when Robinson's office was served by fax on
December 23, 2005, with a copy of Smith's motion to
transfer the two suits to the state court's bankruptcy
calender, he was provided with actual notice of the pend-
ing bankruptcy, and through him Tidwell and Sterling-
Ahlla were also given notice. *Id.* at 327. But due process
entitled the plaintiffs to reasonable notice. *Id.* at 326-27.
In the court's view, that meant notice which alerted
the plaintiffs to key deadlines in time enough for them
to take action in compliance with those deadlines. *Id.* at
327-30. By the time Robinson received the fax, Smith's
bankruptcy petition had been pending for nearly ninety
days, the creditors' meeting had been held more than a
month earlier, and the deadline for filing objections to
the dischargeability of a debt was just sixteen days off.
*See* 379 B.R. at 328.[3] Moreover, the motion served on
Robinson gave no warning of the imminent bar dates. *Id.*

---

[3] The court was assuming that the deadline for objecting to the
dischargeability of a debt was January 8, 2006, although the
notice sent to creditors had specified January 9, 2006, as the
deadline.

Under those circumstances, the court concluded that the belated notice Tidwell and Sterling-Ahlla were given of Smith's bankruptcy did not supply them with sufficient time and information to take appropriate action while the bankruptcy proceeding was still open. *Id.* at 327-30.

The bankruptcy court consequently deemed Count I of the plaintiffs' adversary complaints to have been timely filed and allowed their complaints to stand as an objection to dischargeability pursuant to sections 523(a)(3)(B), 523(a)(6), and 523(c)(1), *id.* at 330, 331; and the court indicated that the discharge injunction would be amended to allow the plaintiffs' state-court cases to proceed to final judgment, *id.* at 331. The court dismissed Counts II and III of their adversary complaints, which had sought revocation of the discharge pursuant to section 727(d)(1). *Id.* at 325, 327. Relief under that provision is appropriate when the debtor procured his discharge through fraud, and the party requesting revocation did not learn of the fraud until after the discharge was granted. *Id.* at 325; *see, e.g., Citibank, N.A. v. Emery (In re Emery)*, 132 F.3d 892, 895 (2d Cir. 1998); *United States v. Willey*, 57 F.3d 1374, 1392 n.33 (5th Cir. 1995). Those requirements normally are read strictly in favor of the debtor, as revoking a discharge reinstates all debts and thus wholly deprives the debtor of the fresh start that Chapter 7 is intended to give him. 379 B.R. at 325; *see Wood v. Cochard (In re Cochard)*, 177 B.R. 639, 642 (Bankr. E.D. Mo. 1995). Here, Tidwell and Sterling-Ahlla became aware of Smith's bankruptcy in advance of his discharge, obviously knew that they had not been properly notified of the bankruptcy, and with quick investigation might

have determined before the discharge issued that Smith's failure to include them on his list of unsecured creditors was intentional. Still, given that they had only days in which to make that determination, the court was willing to assume that the plaintiffs were not on notice of the fraud until after the discharge and that they were entitled to seek revocation of the discharge. 379 B.R. at 325. But, in view of the relief available to Tidwell and Sterling-Ahlla under section 523(a)(3)(B), which the court viewed as a more appropriate vehicle for relief, the court found it unnecessary to entertain the possibility of revoking Smith's discharge. *Id.* Given that the plaintiffs' claims against Smith had not yet been liquidated, the court elected to postpone decision as to the discharge-ability of the claims until such time as judgments were entered in the state-court actions. *Id.* at 330. If Tidwell and Sterling-Ahlla were successful in their state-court proceedings against Smith, they could return to the bankruptcy court to seek judgments of nondischarge-ability. *Id.* at 330-31.

Smith appealed to the district court, which affirmed the bankruptcy court's decision. 2008 WL 4067306. The court found no fault with the bankruptcy court's determination that Smith had committed fraud by intentionally omitting Tidwell and Sterling-Ahlla from Schedule F. Smith's debt to the plaintiffs was potentially nondis-chargeable, and given that his malpractice insurer might not cover any judgment entered in favor of the plaintiffs, the court agreed that it was a permissible inference that Smith had intentionally failed to schedule their claims. *Id.*, at *2. "Since the evidence disclosed that

Smith had lost his job, undoubtedly as a result of the alleged intentional tort, the reason for filing the bankruptcy petition must have been, at least in part, to avoid personal liability to [Tidwell and Sterling-Ahlla]." *Id.* Alternatively, even assuming that the finding of fraud might be clearly erroneous, the court found "compelling" the bankruptcy court's additional finding that the plaintiffs, although they did learn of the bankruptcy prior to the discharge, did not receive the timely and sufficient notice to which due process entitled them. *Id.*, at *3. Not only did Tidwell and Sterling-Ahlla not receive notice of Smith's petition until almost three months after he filed it, but the motion informing them of Smith's petition did not include any information regarding the date and result of the creditors' meeting. Therefore, Tidwell and Sterling-Ahlla could not calculate the bar date for objecting to discharge or dischargeability. *Id.*, at *3. The court noted that a central consideration in evaluating the reasonableness of the notice given to a creditor in a bankruptcy proceeding is whether the notice left the creditor without "sufficient time to take meaningful action," such that the creditor was actually prejudiced. *Id.* (citing *Hartigan v. Peters*, 871 F.2d 1336, 1340 (7th Cir. 1989)). Here, the timing of the notice prejudiced the creditors because it was given only two days before Christmas, a normally quiet period for attorneys. *Id.* Also, given that Robinson is not a bankruptcy attorney, and thus was not knowledgeable about the procedures and practices of bankruptcy proceedings, the belated notice he received of the bankruptcy did not give him sufficient time to take meaningful action. *Id.* The

district court noted finally that Smith was not without recourse, because he still would have the opportunity to defend the two state-court cases, and even if he lost either or both, he would also have the right to object to making the debts nondischargeable in the bankruptcy court. *Id.*

## II.

We have jurisdiction to review the district court's affirmance of the bankruptcy court, provided that the bankruptcy court's order is appropriately characterized as a "final" decision. 28 U.S.C. § 158(d)(1); *see Zedan v. Habash*, 529 F.3d 398, 402 (7th Cir. 2008) (citing *In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006)). Finality in the context of bankruptcy jurisprudence is "'considerably more flexible than in an ordinary civil appeal taken under 28 U.S.C. § 1291.'" *Id.* at 402 (quoting *In re Gould*, 977 F.2d 1038, 1040-41 & n.2 (7th Cir. 1992)). An order of the bankruptcy court may be considered final, and thus immediately appealable, when it definitively resolves a discrete dispute within the larger case. *In re Comdisco, Inc.*, 538 F.3d 647, 651 (7th Cir. 2008) (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983) (Breyer, J.)); *see also Chiplease, Inc. v. Steinberg (In re Resource Tech. Corp.)*, 528 F.3d 467, 474 (7th Cir.), *cert. denied*, 129 S. Ct. 636 (2008). The order at issue here arose from a stand-alone, post-discharge proceeding commenced by Tidwell and Sterling-Ahlla which sought, among other relief, modification of the discharge injunction to permit their lawsuits against Smith in state court to proceed. *See Hendrix v. Page (In re*

*Hendrix)*, 986 F.2d 195, 197 (7th Cir. 1993). The bankruptcy court's decision to grant that request ends this stand-alone proceeding for now. The court did not reach the dischargeability of the claims that Tidwell and Sterling-Ahlla have filed against Smith; resolution of that issue has been postponed pending the outcome of the litigation in state court. That may take years; and if neither of the plaintiffs prevails in her lawsuit against Smith, then there will be no further action for the bankruptcy court to take. In the meantime, Smith must defend himself in the lawsuits (although his insurer apparently will supply that defense) with the prospect of being held liable to Tidwell and Sterling-Ahlla (and possibly with no insurance coverage) hanging over his head. To that extent, the district court's decision to allow the state-court suits to go forward has already deprived him of the fresh start that the discharge order otherwise gave him. The bankruptcy court's order was therefore final for purposes of section 158(d)(1) and we have jurisdiction to review the district court's decision to affirm that order. *See Staffer v. Predovich (In re Staffer)*, 306 F.3d 967, 970-71 (9th Cir. 2002) (deeming final and appealable denial of motion to reopen bankruptcy for purpose of filing of adversary complaint to determine dischargeability of unscheduled debt); *Hendrix*, 986 F.2d at 197 (bankruptcy court's order granting creditors' motion to modify discharge to permit them to reopen state-court personal-injury lawsuit for purpose of proceeding against debtor's insurance carrier was final, appealable order); *In re Barnes*, 969 F.2d 526, 527-28 (7th Cir. 1992) (order granting debtor's motion to reopen

bankruptcy and declare unscheduled debt discharged was final and appealable).

Because our review in a bankruptcy appeal is plenary, we apply the same standards that the district court did in reviewing the bankruptcy court's decision. *Wiese v. Cmty. Bank of Cent. Wis. (In re Wiese)*, 552 F.3d 584, 588 (7th Cir. 2009) (citing *Corp. Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004)); *see also* Fed. R. Bankr. P. 8013. We examine the bankruptcy court's determinations of law de novo and its findings of fact for clear error. *Wiese*, 552 F.3d at 588 (citing *In re ABC-Naco, Inc.*, 483 F.3d 470, 472 (7th Cir. 2007)); Rule 8013. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948).

Smith's initial challenge is to the bankruptcy court's factual determination that his failure to schedule Tidwell and Sterling-Ahlla's lawsuits was fraudulent, but we need not decide whether or not that finding was clearly erroneous. Fraud is a prerequisite to revocation of the debtor's discharge pursuant to section 727(d)(1). *E.g.*, *Citibank, N.A. v. Emery*, *supra*, 132 F.3d at 895. Revocation of Smith's discharge was one of the forms of relief that Tidwell and Sterling-Ahlla sought in their adversary complaints. But the bankruptcy court deemed that harsh remedy—which as we have noted would have reinstated *all* of Smith's debts, not just his debts to Tidwell and Sterling-Ahlla, *see Wood v. Cochard*, *supra*, 177 B.R. at

642—inappropriate in view of the relief available to the plaintiffs under section 523; the court therefore dismissed the portions of the adversary complaints seeking revocation. That aspect of the bankruptcy court's decision has not been challenged in this appeal. All that need be shown to establish a right to relief under section 523(a)(3)(B) is that the debt in question was unscheduled and the creditor did not have notice or actual knowledge of the bankruptcy in time to file a claim and a request for a determination that the debt was nondischargeable. *See Judd v. Wolfe (In re Wolfe)*, 78 F.3d 110, 115-16 (3d Cir. 1996); *Beezley v. Calif. Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1437 (9th Cir. 1993) (O'Scannlain, J., concurring); *Byrd v. Alton (In re Alton)*, 837 F.2d 457, 460 (11th Cir. 1988) (per curiam); *Neeley v. Murchison*, 815 F.2d 345, 347 (5th Cir. 1987). Whether or not the debtor's failure to schedule the debt was deliberate is irrelevant. *Alton*, 837 F.2d at 459 (creditor holding nondischargeable claim who received actual notice of pending bankruptcy in time to seek declaration of nondischargeability prior to bar date was precluded from seeking relief after debtor's discharge, notwithstanding possibility that debtor may have deliberately failed to list creditor: "Despite the misleading actions, inadvertent or intentional, of debtor Alton, the time specifications set out in the Bankruptcy Code are sufficiently clear to have placed an obligation on creditor Byrd to follow the case and to take the timely action necessary to pursue his claim. We leave it to the Bankruptcy Court to decide whether debtor Alton's actions, if in bad faith, can and should affect confirmation of his reorganization plan."); *Stucker v.*

*Cardinal Bldg. Materials, Inc. (In re Stucker)*, 153 B.R. 219, 222
(Bankr. N.D. Ill. 1993) ("there is nothing in the text of
section 523(a)(3)(A) or (B) which references a debtor's
state of mind with regard to the omission in scheduling a
creditor's claim"); *see also Mendiola*, *supra*, 99 B.R. at 869-
70).[4] Thus, as the district court recognized, the bank

---

[4] As a number of courts, including our own, have indicated, the
debtor's mental state in omitting a known creditor may be
relevant to the question of whether an unscheduled debt that
was otherwise dischargeable under 523(a)(3)(A) was, in fact,
discharged. *See Stark v. St. Mary's Hosp. (In re Stark)*, 717 F.2d
322, 324 (7th Cir. 1983) (per curiam) (allowing debtor in no-asset
case to reopen bankruptcy to add omitted creditor holding
otherwise dischargeable debt "where there is no evidence
of fraud or intentional design"); *see also Colonial Sur. Co. v.
Weizman*, 564 F.3d 526, 532 (1st Cir. 2009) (endorsing *Stark*'s
approach); *Stone v. Caplan (In re Stone)*, 10 F.3d 285, 291 (5th Cir.
1994) (collecting cases for proposition that "a court should not
discharge a debt under section 523(a)(3)[(A)] if the debtor's
failure to schedule that debt was due to intentional design,
fraud, or improper motive"). *But see* Lauren A. Helbling &
Christopher M. Klein, *The Emerging Harmless Innocent
Omission Defense to Nondischargeability Under Bankruptcy Code
§ 523(a)(3)(A): Making Sense of the Confusion Over Reopening
Cases and Amending Schedules to Add Omitted Debts*, 69 Am.
Bankr. L. J. 33 (1995) (criticizing analysis of *Stark* and similar
cases which have considered debtor's mental state in omitting
debt as relevant to whether bankruptcy case should be
reopened to permit amendment of schedules in order to add
debts that were omitted innocently and proposing instead
recognition of equitable, harmless innocent omission defense to

(continued...)

ruptcy court's additional finding that Tidwell and Sterling-Ahlla lacked timely notice of Smith's bankruptcy is by itself sufficient to sustain the court's decision to allow their state-court suits to go forward. 2008 WL 4067306, at *3.

Smith also argues that despite his failure to include them in his Schedule F, Tidwell and Sterling-Ahlla were on notice of his 2005 bankruptcy petition and thus were obliged to seek relief from the bankruptcy court before he was discharged. He relies principally on the motion to transfer Tidwell and Sterling-Ahlla's lawsuits to the state court's bankruptcy calendar that was served on their attorney by fax on December 23, 2005. Smith asserts that the motion made the plaintiffs aware of the pending bankruptcy proceeding in time enough for them to object to the discharge of their claims before the bar date. He secondarily contends that because Tidwell and Sterling-Ahlla were previously identified (through their attorney) as unsecured creditors on Schedule F of his 2004 petition, they should somehow have been aware of his 2005 petition.

The adequacy of the notice that Tidwell and Sterling-Ahlla received presents a mixed question of law and fact, in that it calls for the application of legal standards to the

---

[4] (...continued)

§ 523(a)(3)(A) nondischargeability actions). But, as stated above, the debtor's state of mind is not relevant to whether an unscheduled debt that was otherwise *non*dischargeable under section 523(a)(2), (4), or (6) was nonetheless discharged pursuant to section 523(a)(3)(B).

unique facts of this case. *See Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 307 (7th Cir. 2002). A lower court's answer to such a question is normally reviewed for clear error, although de novo review is required as to certain mixed findings, usually those having a constitutional dimension. *Id.* The constitutional mandate of due process does come into play here. Still, our decision in *United States v. Kirtley*, 5 F.3d 1110, 1111-12 (7th Cir. 1993), which considered whether the notice given to a defendant of the violations that led to revocation of his probation complied with due process as well as the relevant rule of criminal procedure, points toward review for clear error. However, other decisions considering the sufficiency of notice in various contexts, emanating from this circuit and others, have engaged in de novo review. *E.g.*, *Brawders v. County of Ventura (In re Brawders)*, 503 F.3d 856, 866 (9th Cir. 2007) (adequacy of notice regarding proposed modification of creditors' rights in Chapter 13 bankruptcy plan); *Peralta-Cabrera v. Gonzales*, 501 F.3d 837, 843 (7th Cir. 2007) (adequacy of notice of deportation hearing); *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 942 (10th Cir. 2005) (adequacy of notice procedures in securities fraud class action); *Lobzun v. United States*, 422 F.3d 503, 507 (7th Cir. 2005) (adequacy of forfeiture notice procedures). We need not explore the subject further; our decision would be the same regardless of what degree of appellate scrutiny we applied.

We agree with both the bankruptcy and district courts that the motion to transfer did not supply Tidwell and Sterling-Ahlla with adequate notice of Smith's second

bankruptcy, such that they were required to act before Smith was discharged and the bankruptcy proceeding was closed. Although it is undisputed that the plaintiffs' attorney did become aware of the pending bankruptcy as a result of that motion, and that he acquired that knowledge while there was still some time left in the bankruptcy proceeding for Tidwell and Sterling-Ahlla to file proofs of claim and to seek a declaration that their claims were nondischargeable, this alone does not establish that the notice was adequate. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950). The notice must not only reasonably convey the required information, but it must also "afford a reasonable time for those interested to make their appearance." *Id.* at 314, 70 S. Ct. at 657. A key function of the notice provided to a creditor in a bankruptcy proceeding is to give the creditor the opportunity to file a proof of claim and, where the debt is potentially nondischargeable, to request a determination of nondischargeability. *Chanute Prod. Credit Ass'n v. Schicke (In re Schicke)*, 290 B.R. 792, 800 (10th Cir. B.A.P. 2003), *aff'd without published op.*, 97 Fed. Appx. 249 (10th Cir. 2004); *In re O'Shaughnessy*, 252 B.R. 722, 732 (Bankr. N.D. Ill. 2000) (quoting *In re Marino*, 195 B.R. 886, 894 (Bankr. N.D. Ill. 1996)); *see generally Zurich Am. Ins. Co. v. Tessler (In re J.A. Jones, Inc.)*, 492 F.3d 242, 249 (4th Cir.

2007); *United States v. Hairopoulos (In re Hairopoulos)*, 118 F.3d 1240, 1244-45 (8th Cir. 1997); *Chemetron Corp. v. Jones*, 72 F.3d 341, 348 (3d Cir. 1995).

The motion to transfer did not serve these interests. Robinson's office did not receive a copy of the motion to transfer until December 23, 2005, almost ninety days after Smith filed his bankruptcy petition and well over a month after the creditors' meeting on November 8, 2005. The motion revealed little more than the pendency of Smith's bankruptcy; it said nothing as to when the bankruptcy was filed, whether or when a creditors' meeting had taken place, or when objections to discharge or to the dischargeability of any debt were due. Thus, Robinson had no way of knowing without further investigation how much time remained for Tidwell and Sterling-Ahlla to preserve their rights as creditors. Because the notice was given only sixteen or seventeen days before the deadline for dischargeability complaints (*see* n.3, *supra*), there was little time left at that point for Robinson to investigate the bankruptcy, ascertain the relevant deadlines, and take appropriate action before the bar date in January. Moreover, Robinson is not a bankruptcy specialist; he is a personal injury attorney. Even if he had seen the notice on December 23, 2005 (rather than on January 4, 2006 when he returned to his office), it is still unlikely he would have had sufficient time to discuss the appropriate course of action with an attorney who specializes in bankruptcy law, consult with his clients, and file the appropriate documents before the deadline for objecting to the dischargeability of his clients' claims expired. This is particularly so given that the motion

was served during the end-of-year period when many people are occupied with holidays, vacations, and family events and little business is transacted. On these facts, the minimal notice belatedly supplied by way of the motion to transfer did not give the plaintiffs a reasonable opportunity to take appropriate action before the deadline for objecting to dischargeability passed and before Smith was discharged. *See Mfrs. Hanover v. Dewalt (In re Dewalt)*, 961 F.2d 848, 851 (9th Cir. 1992) (in most cases, at least thirty days' notice to creditor is necessary and sufficient to satisfy § 523(a)(3)(B); notice supplied seven days prior to bar date is insufficient); *Sophir Co. v. Heiney (In re Heiney)*, 194 B.R. 898, 902-03 (D. Colo. 1996) (notice received eighteen days prior to bar date insufficient); *In re Walker*, 149 B.R. 511, 515-17 (Bankr. N.D. Ill. 1992) (knowledge of bankruptcy acquired by unrepresented creditor twenty days prior to bar date insufficient); *cf. Muse v. Muse (In re Muse)*, 289 B.R. 619, 623-24 (Bankr. W.D. Pa. 2003) (notice provided seventy-seven days prior to deadline for nondischargeability complaint sufficient); *Herman v. Bateman (In re Bateman)*, 254 B.R. 866, 874-75 (Bankr. D. Md. 2000) (notice received twenty-six days prior to bar date sufficient); *Marino*, 195 B.R. at 895-97 (two months' notice was adequate); *but see also Grossie v. Sam (In re Sam)*, 894 F.2d 778, 781-82 (5th Cir. 1990) (eighteen days' notice sufficient).

The notion that Sterling-Ahlla and Tidwell were on inquiry notice that Smith might have filed a bankruptcy petition in 2005 because their attorney had been scheduled and notified of his 2004 petition is untenable.

The 2004 petition had been dismissed for "substantial abuse" of the Chapter 7 process in light of Smith's income and expenses at that time. It was not inevitable that Smith would file a second petition, and of course the plaintiffs had no way of divining *when* he might do so. *See Mountain West Fed. Credit Union v. Stradinger (In re Stradinger)*, Bankr. No. 05-65113-7, 2007 WL 2319812, at *7 (Bankr. D. Mont. Aug. 9, 2007) (knowledge that debtor was contemplating bankruptcy does not amount to notice that she in fact filed bankruptcy petition at later date) (coll. cases). In any case, Tidwell and Sterling-Ahlla were entitled to prompt notice that Smith had filed a second bankruptcy petition—the same notice that most of his other creditors did receive—and it is undisputed that they were not given this notice. The first and only notice they received was the motion to transfer, which as we have discussed was too little and too late to enable them to take appropriate action before Smith was discharged.

Because Tidwell and Sterling-Ahlla were not given timely and sufficient notice of Smith's bankruptcy for them to file complaints to determine the nondischargeability of their claims in compliance with the schedule set by the bankruptcy court, they remained free to file such complaints at any time. Fed. R. Banker. P. 4007(b); *Staffer v. Predovich*, *supra*, 306 F.3d at 971-72; *see also Walker*, 149 B.R. at 516-17; *Mendiola*, 99 B.R. at 868 n.6; *In re Eliscu*, 85 B.R. 480, 481 (Bankr. N.D. Ill. 1988). Laches might be a defense to a complaint filed long after an unscheduled creditor learns of the debtor's bankruptcy. *See*

*Staffer*, 306 F.3d at 973. But because no such defense has been raised here, we need not explore that possibility.

### III.

Under these circumstances, the bankruptcy court appropriately exercised its discretion to allow the state-court cases against Smith to proceed. It committed no error in finding that Tidwell and Sterling-Ahlla received insufficient notice of Smith's petition to have compelled them to take action to preserve their rights before the bar date and before Smith was discharged; their post-discharge adversary complaints and requests for leave to proceed with the state-court litigation were therefore timely.

AFFIRMED.