In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3263

NANCY ELLEN KOVACS,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 11-C-1140 — **Lynn Adelman**, *Judge.*

ARGUED SEPTEMBER 20, 2013 — DECIDED JANUARY 10, 2014

Before WOOD, *Chief Judge*, and BAUER and FLAUM, *Circuit Judges*.

WOOD, *Chief Judge*. This appeal marks the tenth installment of the struggle between taxpayer Nancy Kovacs and the Internal Revenue Service. At its root, the case concerns the IRS's attempts to collect tax debts that arose in tax years 1990–95. Because those debts had been discharged in bankruptcy, the Service's efforts violated 11 U.S.C. § 524(a). Kovacs would like to be compensated for her efforts

in resisting the IRS's demands. But because most of the unlawful collection activities occurred outside the applicable two-year limitations period, the bankruptcy court (affirmed by the district court) awarded her only $3,750 in attorneys' fees. Kovacs contends that she is entitled to more. We conclude, however, that the bankruptcy court correctly applied our instructions in *Kovacs v. United States*, 614 F.3d 666 (7th Cir. 2010), and that its judgment should be affirmed.

## I

Kovacs filed for bankruptcy in July 2001 and received a discharge of her debts in October 2001. Later that year, the IRS notified her that it had applied part of her 2000 tax refund against her outstanding tax debts from tax years 1990 to 1995. Over the following year, Kovacs's attorneys and the IRS went back and forth about the status of those debts, with the IRS claiming that Kovacs still owed over $150,000 and Kovacs denying the obligation. Finally, in August 2003 IRS Appeals Officer Teresa Mulcahy sent Kovacs a letter, in which Mulcahy confirmed that Kovacs's liabilities for the tax years in question had been discharged through her bankruptcy proceeding. Mulcahy also informed Kovacs that the 2000 refund would now be applied against her non-discharged 1999 tax debt.

Apparently the right hand at the IRS did not know what the left hand was doing. Despite Mulcahy's representations, in September 2003 the IRS sent Kovacs two letters labeled "Statement of Adjustment to Your Account." Each of these letters erroneously stated that Kovacs still owed over $13,000 for debts from tax years 1990–1995; in fact, Mulcahy correctly had reported that those debts were discharged. Kovacs and her attorneys apparently spotted the mistake easily. One

of Kovacs's attorneys testified later: "It was a bit of a clean-up; I wasn't alarmed by it in any great fashion." In response to the question "although you may have found [the correspondence] confusing, it [the IRS] wasn't trying to collect taxes for the [tax years in question]?" the lawyer responded, "I don't believe it was, no." After reviewing the two September letters, Kovacs's attorneys did not even bother to contact the IRS insolvency unit to express concern. They did, however, write a brief note clarifying the status of the discharged debt in later correspondence about Kovacs's non-discharged 1999 tax debt.

About 18 months later, in January 2005, Kovacs filed an administrative claim against the IRS, as required by 26 U.S.C. § 7430(b)(1) as a predicate to a lawsuit. When the IRS did not respond to her administrative claim, Kovacs filed an adversary complaint in bankruptcy court in August 2005 (*Kovacs I*). Her petition initially sought just under $12,000 in pre-litigation damages; she later reduced that demand to $8,622, and she also sought over $106,000 in litigation costs. At trial, the IRS admitted its fault but argued that the two-year statute of limitations barred the action. Kovacs conceded that the only losses she could claim were attorneys' fees and costs. She prevailed, but her victory was disappointing. She recovered only a small part of the nearly $115,000 in total damages she sought. The court cut the amounts back to $6,450 in pre-litigation damages and $18,550 in litigation costs because Kovacs had failed to mitigate damages and protracted the litigation.

On appeal, the district court remanded for reconsideration of the government's statute-of-limitations defense (*Kovacs II*). Taking another look at the case, the bankruptcy court

found for the government, because Kovacs had filed more than two years after the IRS's last collection action (*Kovacs III*). The district court affirmed (*Kovacs IV*), and Kovacs appealed. We affirmed in part, but reversed with respect to the two letters that the IRS sent in September 2003, less than two years prior to Kovacs's lawsuit (*Kovacs V,* 614 F.3d 666). We remanded to the bankruptcy court for determination of the damages and litigation costs attributable to those two letters.

On remand again, the bankruptcy court determined that Kovacs was entitled to $3,750 for the two letters (*Kovacs VI*). The court recounted the testimony of Kovacs's lawyers reflecting their lack of concern about the two letters and concluded that "whatever damages were incurred as a result of the two September 2003 letters were minimal." It generously estimated that "reasonable legal services performed by Kovacs'[s] attorneys in relation to the two September 2003 letters consumed approximately 25 hours." Applying the statutory fee rate, the court found Kovacs entitled to $3,750 (that is, 25 hours at $150 per hour). Neither party takes issue with the court's calculation of the time spent responding to the two letters.

Even then, the case was not over. Kovacs appealed again to the district court (*Kovacs VII*), which sent the case back once more to the bankruptcy court to determine whether, in light of *Kovacs V*, Kovacs was still the prevailing party and the government's position was still not substantially justified, so that Kovacs could recover under the statute. That court found in Kovacs's favor (*Kovacs VIII*); the district court upheld the $3,750 award and declared that the award was premised on litigation costs, not actual damages (*Kovacs IX*); and Kovacs has now returned to this court for Round 10.

**II**

We apply the same standards of review as the district court when we review bankruptcy court decisions. *In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009). Questions of law are considered *de novo,* and factual findings receive clear-error scrutiny. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004).

Kovacs's arguments on appeal seek to turn the clock back to earlier stages in this litigation. She urges first that the bankruptcy court's determination in *Kovacs I* that actual damages include attorneys' fees was law of the case and thus should not have been disturbed. Next, she contends that the bankruptcy court's award was for actual damages and thus not subject to the statutory fee limitation on litigation costs. Finally, she asserts that she is the prevailing party and therefore entitled to litigation fees and costs for the entirety of the litigation. We address these points in turn.

1. Law of the Case; Mandate Rule

The Internal Revenue Code, 26 U.S.C. § 7433, authorizes a plaintiff to recover damages for unauthorized tax collection activities (§ 7433 damages), but it also specifies that litigation costs in such actions are compensable only under a different Code provision, 26 U.S.C. § 7430 (§ 7430 litigation costs). In contrast to general § 7433 damages, § 7430 litigation costs are limited by a presumptive maximum hourly fee provided in the statute. *Id.* § 7430(c)(1)(B)(iii).

In *Kovacs I*, the bankruptcy court awarded $6,450 in pre-litigation attorneys' fees without specifying the statutory provision under which the award was made. Although the court measured Kovacs's pre-litigation attorneys' fees according to § 7430's hourly fee rate, Kovacs argues that the

bankruptcy court determined that the pre-litigation fees were compensable as § 7433 damages, rather than § 7430 litigation costs. This, she continues, must stand as law of the case because the government did not appeal that aspect of the bankruptcy court's original decision. Kovacs, however, misunderstands the law-of-the-case doctrine and ignores the significance of the fact that *Kovacs I* was vacated by our decision in *Kovacs V*.

The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988), quoting from *Arizona v. California*, 460 U.S. 605, 618 (1983). This principle is closely related to the mandate rule, which "requires a lower court to adhere to the commands of a higher court on remand." *United States v. Polland*, 56 F.3d 776, 777 (7th Cir. 1995). Both rules have a role to play in this case, since it involves rulings from a higher court as well as seriatim decisions of courts at the trial level. A court to which a case has been remanded may address only the issue or issues remanded, issues arising for the first time on remand, and issues that were timely raised but which remain undecided. *United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001). The lower court is bound, through the mandate rule, to the resolution of any points that the higher court has addressed. *Id.*; see also *United States v. Husband*, 312 F.3d 247, 250 (7th Cir. 2002) ("[T]his court does not remand issues … when those issues have been waived or decided.").

In *Kovacs V*, we held that Kovacs's suit "as a whole" was not timely, because almost all of the IRS's unlawful collection activities occurred more than two years before she filed her

lawsuit. 614 F.3d at 677; see also *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996) ("[T]he scope of the remand is determined not by formula, but by inference from the opinion as a whole."). This was an important ruling, since Kovacs may pursue this suit only insofar as her action falls within a proper waiver of sovereign immunity. For some laws, the applicable statute of limitations determines the temporal scope of the government's waiver of sovereign immunity in a particularly forceful way. In such cases, the statute of limitations serves a weighty enough policy that a court must consider it even if the government has waived the point. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34 (2008). For this kind of statute, the Court noted, "[a]s convenient shorthand … [it] has sometimes referred to the time limits … as 'jurisdictional.'" *Id.* at 134. Compare *Sebelius v. Auburn Reg. Med. Ctr.*, 133 S. Ct. 817, 824 (2013) (deadline for exhausting administrative remedies in Medicare suits against the United States is not jurisdictional). Here, however, because the government has raised its limitations defense throughout the litigation, it makes little difference whether we call the defense quasi-jurisdictional. The only part of Kovacs's suit that survived our earlier decision relates to the two September 2003 letters, which appear to have been sent within the two-year limitations period. *Kovacs V*, 614 F.3d at 677. We remanded for determination of the damages that could be attributed exclusively to those letters. *Id*.

On remand, the bankruptcy court properly addressed this issue. It calculated the number of hours that Kovacs's attorneys spent responding to the two letters, then multiplied that figure by the statutory fee of $150 per hour. Although the court did not make clear whether its new award reflected § 7433 damages or § 7430 litigation costs, its use of

the statutory fee from § 7430—as in its earlier decision—indicates that the award was based on § 7430. The bankruptcy court's determination in *Kovacs I* has no further force because we specifically vacated that order. (In fact, though we do not need to belabor the point, a look at the *Kovacs I* opinion reveals that all pre-litigation damages awarded there were associated with time-barred collection activities.)

### 2. § 7433 Damages Versus § 7430 Litigation Costs

Kovacs next argues that, regardless of law of the case, the award at issue here was for damages recoverable under § 7433, and therefore it was not subject to the statutory fee limitation on § 7430 litigation costs. In her view, because all legal services related to the two letters occurred before the commencement of litigation, by definition they could not be litigation costs. But there is no rule that litigation costs can accrue only after the litigation commences. See *Webb v. Bd. of Educ. of Dyer Cnty, Tenn.*, 471 U.S. 234, 243 (1985) ("Of course, some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation.'") (interpreting 42 U.S.C. § 1988). To be compensable under a fee-shifting statute, "the work done by counsel must be 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (quoting *Webb*, 471 U.S. at 243). "Application of this standard is left to the discretion of the district court." *Id.*

There is no reason to apply a different analysis to the determination of reasonable litigation fees under 26 U.S.C. § 7430. That statute allows the prevailing party to collect "reasonable litigation costs incurred in connection with [a]

court proceeding," 26 U.S.C. § 7430(a)(2), and defines rea-
sonable litigation costs to include "reasonable fees paid or
incurred for the services of attorneys in connection with the
court proceeding," *id*. § 7430(c)(1)(B)(iii). The key question is
which services occur "in connection with" a court proceed-
ing. We cannot say that the bankruptcy court in this case
abused its discretion when it decided that the legal services
performed for Kovacs occurred in connection with the litiga-
tion.

The distinction between § 7430 litigation costs and § 7433
damages is important because of the statutory fee cap that
applies to the former. Section 7430 spells out detailed rules
for which litigation costs are recoverable. Notably, it limits
recoverable attorneys' fees, absent special circumstances, at a
cost-of-living-adjusted rate that was $150 per hour at the
time of this case. See § 7430(c)(1)(B)(iii). Section 7433 does
not include any such language; it authorizes the recovery of
"actual, direct economic damages," plus costs. *Id.* § 7433(b).
For actions relating to the effect of a discharge, § 7433 per-
mits an action for damages, but it notes that "administrative
and litigation costs in connection with such an action may
only be awarded under section 7430." 26 U.S.C. §§ 7433(e)(1),
(2)(B)(i).

In context, it is clear that the bankruptcy court based its
award on § 7430. Looking to Exhibit 37, which contained en-
tries of the legal services performed by Kovacs's attorneys,
the court "estimate[d] a total of 10 hours of these entries
were in connection with the two September 2003 letters." But
the court did not stop with Exhibit 37. Overall, it concluded
that "the reasonable legal services performed by Kovacs'[s]
attorneys in relation to the two September 2003 letters con-

sumed approximately 25 hours." Frankly, even this seems generous to us, but neither party asks us to review this aspect of the case. The bankruptcy court acted well within its discretion when it found no § 7433 damages and only 25 hours of § 7430 litigation costs.

### 3. Fees for the Entire Litigation

Finally, Kovacs argues that she is entitled to her attorneys' fees and costs for the entirety of the litigation because she was the prevailing party. See 26 U.S.C. § 7430(a). In support of this argument, Kovacs makes a few points: (1) the bankruptcy court erred by failing to analyze § 7430 litigation costs and § 7433 damages separately; (2) Kovacs's award should not be reduced for failure to mitigate damages; and (3) Kovacs's reasonable litigation costs should not be calibrated to her monetary recovery or require victory on all claims. None of these arguments, however, acknowledges the elephant in the room: the statute of limitations.

We have already explained why the only fair reading of the bankruptcy court's opinion reveals that it concluded (correctly) that any award for Kovacs had to be based on § 7430. Moreover, the result in *Kovacs V* was largely unfavorable to Kovacs. The court was entitled to take this into account when it considered whether Kovacs was entitled to litigation costs for the entirety of the litigation. Kovacs tries to avoid this result by arguing that some attorneys' fees should be compensable as damages rather than litigation costs. She points out that a plaintiff who prevails against the IRS seldom has additional damages beyond her attorneys' fees. But this argument proves too much. Notwithstanding that reality, Congress chose to impose a statute of limitations. There is no support for the idea that Congress intend-

ed to set aside the statute of limitations for the most likely form of loss associated with these claims.

We have little to say about Kovacs's argument that her award should not have been reduced for failure to mitigate damages, for the simple reason that the award was not reduced for any such reason. Kovacs is apparently referring to the bankruptcy court's opinion in *Kovacs I*, in which the court cut her recovery because it found that she failed to mitigate damages and unreasonably protracted the litigation. As we have noted several times in this opinion, *Kovacs I* is history. It is true that the bankruptcy court remarked in *Kovacs VI* that "this case has been vastly over-lawyered, over-staffed, and over-pleaded by Kovacs' attorneys," but that view did not influence the court's award. As we already have noted, the court calculated the hours spent responding to the two September letters and applied the statutory hourly fee. Because the award at issue here was not reduced for failure to mitigate, there is nothing to this argument.

Finally, Kovacs protests that the Supreme Court has held that prevailing-party fee awards in public interest cases should not be a function of the monetary sums at stake and that a plaintiff need not prevail on all claims in such cases to be entitled to full fees. *E.g., Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). That is true, as far as it goes. Public-rights suits often vindicate interests that cannot be quantified in money. See *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) ("Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases … to depend on obtaining substantial monetary relief.").

Fee-shifting in tax cases, as authorized by 26 U.S.C. § 7430, also serves an important public-interest function; we find it unhelpful to wonder whether that interest is as weighty as those served by the civil rights statute. *Cf. Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2010) (explaining that fee shifting in "Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights"). The difficulty for Kovacs is not with the strength of the analogy between § 7430 and § 1988; it is with the impact of the statute of limitations on her case.

In this appeal, Kovacs is trying to erase the consequences of *Kovacs V* and to avoid the fact that only a small remnant of her case remains. She would like us to rule that, notwithstanding that fact, she may recover all the litigation costs she accrued throughout this saga. That, however, would flatly contradict our holding in *Kovacs V* that "[e]ach of the IRS's attempts to collect taxes from Kovacs was a discrete act rather than a continuing violation or part of the original violation." 614 F.3d at 676. Although we sympathize with Kovacs's frustration at the IRS's initial errors, the statute of limitations stands in the way of broader relief. The bankruptcy court, affirmed by the district court, correctly held that Kovacs may recover only $3,750 in litigation costs.

AFFIRMED.